**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 26, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

PRE-PAID LEGAL SERVICES, INC.,

      Plaintiff - Appellee,

v.

TODD CAHILL,

      Defendant - Appellant.

No. 14-7032

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 6:12-CV-00346-JHP)**

---

Gary E. Smith, Gary E. Smith, P.C., Dallas, Texas, appearing for Appellant.

Timila S. Rother (Harvey D. Ellis, Jr. and Melanie Wilson Rughani, with her on the brief), Crowe & Dunlevy, Oklahoma City, Oklahoma, appearing for Appellee.

---

Before **MATHESON**, **SEYMOUR**, and **McHUGH**, Circuit Judges.

---

**MATHESON**, Circuit Judge.

---

Pre-Paid Legal Services, Inc., d.b.a. LegalShield ("Pre-Paid"), sued Todd Cahill,

its former employee, alleging tort and contract violations. Mr. Cahill removed the case

from state to federal court based on diversity jurisdiction, and moved to stay the district

court proceedings under the Federal Arbitration Act ("FAA") so the parties could pursue

arbitration. The FAA requires a court to stay its proceedings pending arbitration provided "the applicant for the stay is not in default in proceeding with the arbitration." 9 U.S.C. § 3. The district court granted Mr. Cahill's motion to stay the proceedings.

Mr. Cahill, however, failed to pay his share of the arbitration fees, and the arbitrators directed termination of the arbitration proceedings. Pre-Paid moved the district court to lift the stay and resume with litigation. The court granted the motion, adopting a magistrate judge's report and recommendation. The magistrate judge had recommended lifting the stay because the arbitrators "elected to terminate" the proceedings and "[i]t is clear under these circumstances that the arbitrators considered Cahill's failure to pay to be a default in arbitration." App. at 603.

Mr. Cahill appeals the district court's order, arguing the court violated § 3 of the FAA by lifting the stay. He asks this court to reinstate the stay. Pre-Paid argues we lack jurisdiction to hear this appeal. It also opposes the appeal on the merits.

We have jurisdiction to hear this appeal under 9 U.S.C. § 16(a)(1)(A). On the merits, we affirm.

## I.  BACKGROUND

### A.  *Factual History*

Pre-Paid sells legal services contracts through which members have access to the assistance of provider attorneys. Independent sales associates sell these contracts through a network marketing system. Mr. Cahill became an independent sales associate with Pre-Paid in 2004.

In his employment contract with Pre-Paid, Mr. Cahill agreed not to solicit or recruit Pre-Paid's other sales associates during the term of his contract or for two years after its termination. The contract also required

> [a]ll disputes and claims relating to [Pre-Paid], [this] Agreement, . . . or any other claims or causes of action between [Cahill and Pre-Paid] . . . , whether in tort or contract, shall be settled totally and finally by arbitration . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . .

App. at 120.

In 2012, Mr. Cahill left Pre-Paid to join another network marketing company. Pre-Paid alleges Mr. Cahill began to misuse trade secret information, contact other Pre-Paid associates, and solicit them to join his new place of employment.

B. *Procedural History*

On August 14, 2012, Pre-Paid filed an action in Oklahoma state court claiming Mr. Cahill had breached his contract, unlawfully misappropriated Pre-Paid's trade secrets, and tortiously interfered with contract and business relations. Mr. Cahill removed the action to the District Court for the Eastern District of Oklahoma.

On August 24, 2012, Mr. Cahill moved to stay the district court proceedings pending arbitration. Pre-Paid did not object. A magistrate judge recommended granting Mr. Cahill's motion for a stay. On February 12, 2013, the district court adopted the magistrate judge's recommendation and entered the stay pending arbitration.

On February 13, 2013, Pre-Paid initiated arbitration proceedings before the American Arbitration Association ("AAA"). Pre-Paid paid its share of arbitration fees, but Mr. Cahill did not. Pre-Paid declined to pay Mr. Cahill's share of the fees. The

- 3 -

Director of ADR Services at the AAA repeatedly warned Mr. Cahill's attorney that if Mr. Cahill did not pay, the arbitration proceedings would be suspended, which is exactly what happened.

On June 27, 2013, the arbitration panel suspended the arbitration, warning the parties that if the deposits were not paid by a certain date, the arbitration would be terminated. Mr. Cahill still refused to pay and did not request any form of accommodation from the arbitrators. On July 10, 2013, the AAA terminated the arbitration: "As advised in our correspondence dated June 27, 2013, the outstanding balance remains unpaid. . . . By direction of the Panel, we have closed our file pursuant to R-54." *Id.* at 441.

On July 16, 2013, Pre-Paid moved to lift the stay of district court proceedings. Mr. Cahill filed a response opposing Pre-Paid's motion to lift the stay. On March 31, 2014, a magistrate judge recommended the motion be granted. On April 16, 2014, the district court adopted that recommendation and lifted the stay.

Mr. Cahill appeals the district court's lifting of the stay. He argues this court has jurisdiction under 9 U.S.C. § 16(a)(1)(A). Pre-Paid moves to dismiss the appeal for lack of jurisdiction. If we reach the merits, Pre-Paid urges us to affirm the lifting of the stay.

C. *Legal Background*

Two FAA provisions and two AAA rules are relevant to this case. Section 16(a)(1)(A) of the FAA provides: "(a) An appeal may be taken from—(1) an order—(A) refusing a stay of any action under section 3 of this title." 9 U.S.C. § 16(a)(1)(A). Section 3, in turn, mandates a stay of federal court proceedings pending arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

AAA Rule 50 requires parties to share arbitration expenses equally "unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties." App. at 486. AAA Rule 54 provides that if the payments are not made, "the AAA may so inform the parties in order that one of them may advance the required payment." *Id.* at 487. But if the payments remain unpaid, "the arbitrator may order the suspension or termination of the proceedings." *Id.*

## II. **DISCUSSION**

We have jurisdiction under 9 U.S.C. § 16(a)(1)(A) to hear this appeal. On the merits, we affirm the district court.

### A. *Jurisdiction*

#### 1. **Interlocutory Review under the FAA**

28 U.S.C. § 1291 grants courts of appeals jurisdiction over "all final decisions of the district courts of the United States." A final decision "is a decision by the district court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1492 (10th Cir. 1994) (quoting *Catlin v. United States*, 324 U.S. 229, 233

(1945)).  A district court's decision to lift a stay is not final; rather than end the litigation, it revives it.  It would initially appear we do not have jurisdiction to review the district court's decision here to lift the stay.

Section 16(a)(1)(A) of the FAA, however, recognizes an exception to the final decision rule for an order that refuses a stay under 9 U.S.C. § 3.  *See* 9 U.S.C. § 16(a)(1)(A).  As explained above, § 3 mandates a stay of federal court proceedings pending arbitration.  The provision manifests a "liberal federal policy favoring arbitration agreements."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quotations omitted).  "In considering our appellate jurisdiction, . . . § 16(a) ensur[es] that district court orders hostile to arbitration agreements can be immediately appealed."  *Grosvenor v. Qwest Corp.*, 733 F.3d 990, 995 (10th Cir. 2013) (alteration in original) (quotations omitted).

Here, the district court initially stayed its proceedings on February 12, 2013.  Its April 16, 2014 order lifted that stay.  Our threshold question is whether the order lifting the stay is an order "refusing a stay of any action under section 3," which would confer jurisdiction on this court to review the order.  9 U.S.C. § 16(a)(1)(A).

2.  **Statutory Interpretation and Application**

When interpreting a statute, "we turn first to the text."  *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009) (quotations omitted).  "If the words of the statute have a plain and ordinary meaning, we apply the text as written."  *Id.* We also consider the statute's broader context.  *Id.*

- 6 -

Federal courts interpret jurisdictional statutes narrowly. *Id*. at 1382 ("Because of the limited and defined nature of the jurisdiction of the federal courts, we are bound to construe statutes conferring jurisdiction narrowly."). "[I]f there is ambiguity as to whether the instant statute confers federal jurisdiction over this case, we are compelled to adopt a reasonable, narrow construction." *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1095 (10th Cir. 2005).

Our jurisdictional analysis focuses on two phrases in § 16(a)(1)(A)—"refusing a stay" and "under section 3."

a. *"[R]efusing a Stay"*

Section 16(a)(1)(A) permits an appeal only from an order "refusing a stay." 9 U.S.C. § 16(a)(1)(A). Pre-Paid argues Mr. Cahill is not appealing an order "refusing a stay" but is instead appealing an order lifting the stay the district court had previously granted. This appeal, according to Pre-Paid, falls outside the scope of § 16(a)(1)(A). We disagree.

The order lifting the stay here was effectively one "refusing a stay." Mr. Cahill sought and initially received a stay. When the district court later lifted the stay, it declined to keep the stay in effect. The court's decision granted Pre-Paid's request to lift the stay but also denied Mr. Cahill's request to maintain the stay, a request Mr. Cahill made in his response to Pre-Paid's motion to lift the stay. We cannot draw a meaningful distinction in applying § 16(a)(1)(A) between an order that refuses a request for a stay and an order that refuses a request to maintain a stay already in place. The district court's

decision both lifting the stay and refusing to continue the stay was therefore effectively one "refusing a stay."

Three other circuits have equated lifting a stay with "refusing a stay" under § 16(a)(1)(A). In *GEA Group AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 414 (7th Cir. 2014), the appellee moved the district court to lift an already-imposed stay, and the appellant argued for its continuation while arbitration was pending. The district court agreed with the appellee in part, partially lifting the stay to allow for limited discovery. *Id*. at 415. On appeal, the Seventh Circuit determined it had jurisdiction over the district court's order:

> [The appellant] asked for a stay under section 3 of all proceedings in the district court. The district judge in the order that [the appellant] is appealing has granted in effect a more limited stay. His refusal to grant the complete stay that [the appellant] seeks is appealable even though the stay order is interlocutory and the appellant might not be entitled to the stay that he is seeking.

*Id*.; *see also Dobbins v. Hawk's Enters.*, 198 F.3d 715, 716 (8th Cir. 1999) (equating, without explanation, an order to lift a stay with an order refusing a stay); *Corpman v. Prudential-Bache Sec., Inc.*, 907 F.2d 29, 30 (3d Cir. 1990) (noting it had jurisdiction to consider an order vacating a stay and reinstating a case "since the district court's order is in essence an order refusing to stay an action under section 3 of the Federal Arbitration Act").

Guided by the statute's text and persuasive authority from other circuits, we conclude the district court's order lifting the stay in this case was effectively one "refusing a stay" under § 16(a)(1)(A).

b. *"[U]nder section 3"*

Section 16(a)(1)(A) permits an appeal only from an order "refusing a stay of any action *under section 3* of this title." 9 U.S.C. § 16(a)(1)(A) (emphasis added). We must therefore also consider whether Mr. Cahill appeals an order refusing a stay "under section 3." *Id.*

In *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 627-29 (2009), the Supreme Court instructed that circuit courts should not consider the underlying merits of an appeal from the denial of a stay in determining whether they have jurisdiction. Instead, "any litigant who asks for a stay under § 3 is entitled to an immediate appeal from denial of that motion—regardless of whether the litigant is in fact eligible for a stay." *Id.* at 627. "Jurisdiction over the appeal . . . must be determined by focusing upon the category of order appealed from, rather than upon the strength of the grounds for reversing the order." *Id.* at 628 (quotations omitted). Thus, in determining whether we have jurisdiction in this case, *Arthur Andersen* prohibits us from considering the merits of the appeal—whether Mr. Cahill was in default or the arbitration had terminated at the time the district court refused to maintain the stay.

Shortly after *Arthur Andersen*, this court in *Conrad* recognized two ways for a circuit court to determine whether an appellant had asked the district court for a stay "under section 3" for purposes of appellate jurisdiction under § 16(a)(1)(A). 585 F.3d at 1385. First, the "surest way to guarantee appellate jurisdiction under § 16(a) is to caption the motion in the district court as one brought under FAA § [] 3." *Id.* Second, if a motion "is not explicitly styled as a motion under the FAA, or the court suspects that the

motion has been mis-captioned in an attempt to take advantage of § 16(a), the court must look beyond the caption to the essential attributes of the motion itself." *Id.* "If the essence of the movant's request is that the issues presented be decided exclusively by an arbitrator and not by any court, then the denial of that motion may be appealed under § 16(a)." *Id.* at 1386.

*Conrad* then applied this test to the appellants' appeal of a district court order granting in part and denying in part their motion to dismiss. *Id.* at 1379-80, 1386. We held this court lacked jurisdiction to hear the appeal because the appellants failed to meet either means to satisfy § 16(a)(1)(A). First, they styled their motion in district court as one to dismiss rather than a motion under § 3 to stay litigation. *Id.* at 1386. Second, looking beyond the motion's caption, we identified the requested judicial relief was for dismissal "rather than a request that the court refer the case to an arbitrator to decide the issues." *Id.*

Mr. Cahill's response to Pre-Paid's motion to lift the stay satisfies § 16(a)(1)(A)'s and *Conrad*'s requirements. Mr. Cahill did not caption his response as one brought under § 3, but he did ask the court to maintain the stay under the FAA. He argued that whether he was in default "is for the arbitrators, not the District Court to decide." App. at 502. By contrast, the appellants in *Conrad* did not request relief under the FAA from the district court, nor did they seek arbitration as the sole remedy.

Pre-Paid argues we have no jurisdiction under § 16(a)(1)(A) and *Conrad* because its motion in district court did not seek relief under § 3; rather, its motion sought to lift the stay and proceed in court, not in arbitration. But Pre-Paid, the appellee here,

mistakenly focuses on itself rather than the appellant, Mr. Cahill. Although Mr. Cahill technically did not move for a stay under § 3, his response to Pre-Paid's motion sought a § 3 stay and therefore satisfies § 16(a)(1)(A) and *Conrad*. *See GEA Group AG*, 740 F.3d at 415 (noting the appellant "asked for a stay under section 3" even though the appellee had moved for a lift of the stay and the appellant opposed the lift).

Pre-Paid also attempts to rely on *Grosvenor*. In that case, Mr. Grosvenor had sued Qwest. *Grosvenor*, 733 F.3d at 992. The parties filed cross-motions for partial summary judgment contesting the enforceability of an arbitration agreement. *Id*. at 991-92. The district court's summary judgment order held that the arbitration agreement between the parties was illusory and unenforceable. *Id*. at 992. Qwest appealed, and this court dismissed for lack of jurisdiction. *Id*.

*Grosvenor* interpreted and applied 9 U.S.C. §§ 16(a)(1)(B) and 4. Section 16(a)(1)(B) provides: "(a) An appeal may be taken from—(1) an order . . . (B) denying a petition under section 4 of this title to order arbitration to proceed." 9 U.S.C. § 16(a)(1)(B). Section 4 provides, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

*Id*. § 4.

Among other differences, § 16(a)(1)(B) allows appellate jurisdiction only when the district court has denied a particular form of request: "a petition . . . to order arbitration to proceed." *Id*. § 16(a)(1)(B). By contrast, § 16(a)(1)(A) is not limited to a particular form of request, and it allows appellate jurisdiction when the district court has "refus[ed] a stay." *Id*. § 16(a)(1)(A).

*Grosvenor* said Qwest's motion for partial summary judgment did not ask the district court to order arbitration under § 4, thereby failing *Conrad*. *Grosvenor*, 733 F.3d at 998.[1] For the reasons explained above, Mr. Cahill's response requested to maintain a stay under § 3, thereby satisfying *Conrad*. The *Grosvenor* court also said it could not consider Qwest's response to Mr. Grosvenor's motion for partial summary judgment because it was not a "'petition under section 4 . . . to order arbitration.'" *Id.* at 997 (quoting 9 U.S.C. § 16(a)(1)(B)). Qwest had neither petitioned the court for an order to compel arbitration nor did it even ask for such an order in its response. *Id*. But Mr. Cahill's response to Pre-Paid's motion requested to maintain a stay, which is sufficient under §§ 16(a)(1)(A) and 3. Pre-Paid's reliance on *Grosvenor* fails.

\* \* \* \*

For the foregoing reasons, we have jurisdiction to hear this appeal.

---

[1] Earlier in the litigation, the district court had denied Qwest's motion to compel arbitration under § 4, and Qwest did not attempt to appeal from that order. *Id.* at 991, 997. Both parties then moved for partial summary judgment. *Id*. at 991. In its motion, Qwest argued the parties had entered an arbitration agreement, but it "did not make another request for an order to compel arbitration." *Id*. This court therefore determined that Qwest's appeal could not satisfy *Conrad*'s requirements. *Id*. at 998.

- 12 -

## B. *Merits*

We affirm the district court's lifting of the stay because § 3 did not require the court to maintain a stay. We analyze two relevant phrases in § 3—"until such arbitration has been had in accordance with the terms of the agreement" and "in default in proceeding with such arbitration." 9 U.S.C. § 3. Each independently supports the district court's order.

As for the standard of review, "[w]e review de novo the district court's decision to deny a stay pending arbitration." *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1196 (10th Cir. 2009). "We review a district court's decision as to default of arbitration *de novo* but defer to the district court's underlying factual findings." *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 342 (4th Cir. 2009). "[W]e review the factual findings of a district court for clear error." *Sink v. Aden Enters.*, 352 F.3d 1197, 1199 (9th Cir 2003).

### 1. "[U]ntil such arbitration has been had in accordance with the terms of the agreement"

In recommending the stay be lifted, the magistrate judge noted "the arbitration in this case is not still pending, because the arbitrator has decided that the appropriate remedy for Cahill's failure to pay his share of costs was dismissal." App. at 602. Although § 3 does not use the term "pending" in reference to arbitration, it does state a federal court must stay court proceedings until arbitration "has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The employment contract between Mr. Cahill and Pre-Paid specifies that "[a]ll disputes and claims . . . shall be settled totally and

finally by arbitration . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association." App. at 120.

The phrase "totally and finally" may suggest the arbitration "ha[d] [not] been had in accordance with the terms of the agreement" because it had not reached a merits determination. *Id*.; 9 U.S.C. § 3. But the agreement specifies the arbitration settle all disputes and claims "totally and finally . . . in accordance with" the AAA rules. App. at 120. The rules require the parties to share arbitration expenses equally. Without payment, the arbitration panel can and did terminate the proceedings.

The AAA determined the arbitration had gone as far as it could due to Mr. Cahill's repeated refusal to pay the fees. Under the AAA rules, the panel terminated the proceedings. As such, the arbitration "ha[d] been had in accordance with the terms of the agreement," 9 U.S.C. § 3, removing the § 3 requirement for the district court to stay the proceedings.

Our holding is consistent with decisions of other courts that have determined a party's failure to pay its share of arbitration fees breaches the arbitration agreement and precludes any subsequent attempt by that party to enforce that agreement. *See, e.g.*, *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1011 (9th Cir. 2005) (explaining the defendant "breached the arbitration agreement by refusing to participate in properly initiated arbitration proceedings" and that the "breach was tantamount to a repudiation of the arbitration agreement"); *Sink*, 352 F.3d at 1201 ("[F]ailure to pay required costs of arbitration was a material breach of its obligations in connection with the arbitration."); *Garcia v. Mason Contract Prods., LLC*, No. 08-23103-CIV, 2010 WL 3259922, at *3

(S.D. Fla. Aug. 18, 2010) (unpublished) (holding "[b]y failing to timely pay its share of the arbitration fee, Defendant materially breached its obligations, thereby 'scuttling' [its] opportunity" to insist on arbitration).[2]

Mr. Cahill breached the arbitration agreement by failing to pay his fees in accordance with AAA rules and was not entitled to maintain the stay under § 3.

## 2. **"[I]n default in proceeding with such arbitration"**

Alternatively, lifting the stay was permissible under § 3 because Mr. Cahill was "in default in proceeding with [the] arbitration." 9 U.S.C. § 3. Section 3 does not require a stay when the applicant for the stay is in default. Because only Mr. Cahill wanted a stay and because he was in default, § 3's mandate to issue a stay did not apply.

### a. *Mr. Cahill was "[i]n default in proceeding with [the] arbitration."*

The parties agree and the record shows Mr. Cahill failed to pay his share of the arbitration fees. The AAA repeatedly asked him to pay. In the arbitration proceeding, Mr. Cahill did not show he was unable to afford payment, ask the arbitrators to modify his payment schedule, or move for an order requiring Pre-Paid to pay his share for him so that arbitration could continue. Instead, by refusing multiple requests to pay, he allowed arbitration to terminate.

Failure to pay arbitration fees constitutes a "default" under § 3. Because Mr. Cahill failed to pay his arbitration fees, he was in "default." *See Garcia*, 2010 WL

---

[2] Although unpublished, out-of-circuit, district court opinions lack precedential value, we find the reasoning of such decisions cited here to be instructive under the circumstances of this case. *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

3259922, at \*4 ("[T]his default was . . . an intentional and/or reckless act because the AAA provided repeated notices to the Defendant that timely payment of the fee had not been received. . . . There is no other description the Court can find for this self-created situation other than 'default.'"); *Rapaport v. Soffer*, No. 2:10-cv-00935-KJD-RJJ, 2011 WL 1827147, at \*2 (D. Nev. May 12, 2011) (unpublished) (finding the defendant was in default under § 3 because the AAA "closed" or "terminated" the case because of his failure to pay fees); *Sanderson Farms, Inc. v. Gatlin*, 848 So. 2d 828, 837-38 (Miss. 2003) (finding the defendant refused to pay its one-half of the costs pursuant to an arbitration agreement and that this constituted "default" under § 3). Because Mr. Cahill was in default, the district court was not obligated under § 3 to maintain the stay so that arbitration could proceed.[3]

   b. *The question of default under § 3 is not reserved for a formal finding by arbitrators.*

Mr. Cahill contends the arbitrators must find default under § 3. Because the arbitrators did not make a formal finding of default when they terminated the proceedings, Mr. Cahill argues "it is not the trial court's place to substitute its judgment or to guess what the arbitrator meant" on the nonpayment of fees and its consequences. Aplt. Br. at 7.

---

   [3] The FAA does not define "[d]efault in proceeding with [the] arbitration." 9 U.S.C. § 3. As noted above, some courts have viewed a party's failure to pay its share of the arbitration fees as a breach of the arbitration agreement, which precludes any subsequent attempt by that party to enforce that agreement. Other courts have treated the failure to pay arbitration fees as a waiver of the right to arbitrate. *See, e.g.*, *Brown*, 430 F.3d at 1012-13. Under either approach, the result is the same: Mr. Cahill's failure to pay his share of costs precludes him from seeking arbitration.

Mr. Cahill relies primarily on *Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002). In *Howsam*, the Supreme Court considered a rule of the National Association of Securities Dealers ("NASD") that no dispute is subject to arbitration when six years have elapsed since the event giving rise to the dispute. *Id*. at 81. After the petitioner sought arbitration, the respondent sued in federal district court, invoking the NASD rule. *Id.* at 82. The Supreme Court held an arbitrator, not the court, should apply the rule. *Id.* at 82-85. "[P]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide. So, too, the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability." *Id.* at 84 (quotations, citation, and alterations omitted).

*Howsam* is distinguishable. It dealt with an NASD rule about time limits, not default under § 3 of the FAA. The time limit was part of the arbitrator's own rules and not contained in a federal statute like § 3. Indeed, the Court in *Howsam* noted that NASD arbitrators, as compared to judges, are "comparatively more expert about the meaning of their own rule, [and] are comparatively better able to interpret and to apply it." *Id*. at 85. The same cannot be said, however, of the meaning of "default" in a federal statute; the parties "would likely have expected a court to have decided [this] gateway matter." *Id*. at 83.[4]

At least one circuit has expressed concern about divesting courts of the power to decide whether a default has occurred under § 3. In *Marie v. Allied Home Mortgage*

---

[4] But even if we were to assume *Howsam* established a firm rule that default determinations under § 3 must be made by arbitrators, the arbitrators did make a finding of default here, as will be explained below.

*Corp.*, 402 F.3d 1, 3 (1st Cir. 2005), the First Circuit considered whether the appellant had waived its right to arbitrate due to inconsistent activity in another litigation forum. The court analyzed this waiver issue under § 3 because "default" in § 3 includes "waiver." *Id*. at 13. Citing § 3's default language, the First Circuit noted "[t]his language would seem to place a statutory command on courts, in cases where a stay is sought, to decide the waiver issue themselves." *Id*.; *see also id*. at 14 n.10 ("The 'default' language in Section 3 of the FAA . . . perhaps gives courts a duty, which cannot be shifted by contract between the parties, to determine whether waiver has occurred.").

In addition to *Marie*, we find *Sink* more instructive to decide our case than *Howsam*. In *Sink*, the Ninth Circuit permitted the lifting of a stay after the district court found the defendants had failed to pay their arbitration fees. 352 F.3d at 1199-1200. The arbitration entity had cancelled the arbitration due to the nonpayment of fees. *Id.* at 1199. The plaintiff then sought, and the arbitrator entered, default against the defendants. *Id.* The plaintiff moved to lift the stay of district court proceedings, which the court granted because the defendants had defaulted. *Id.* The defendants appealed, arguing it was error for the district court to find they had defaulted. *Id.* The Ninth Circuit affirmed, noting the district court's finding was "in confirmation" of the arbitrator's determination of default and was supported by the record. *Id.* at 1199-1200.

Mr. Cahill argues *Sink* is distinguishable because the AAA in this case did not enter a formal default order against him, whereas the arbitration entity did in *Sink*. We disagree. Contrary to Mr. Cahill's assertion that "[t]he arbitrator's finding of default in *Sink* was dispositive," Aplt. Br. at 8, the Ninth Circuit did not rely exclusively on the

formal default order.  It also relied on the record, which showed the defendants had received multiple notices to pay, did not report inability to pay, and had not made genuine efforts to make alternative arrangements.  *Sink*, 352 F.3d at 1199; *see also Garcia*, 2010 WL 3259922, at *1 ("The record here shows that Defendant is now in default.").  The Ninth Circuit never mentioned *Howsam*.

Other courts also have rejected the argument that *Sink* is distinguishable from cases where the arbitrators had not formally entered default.  *See, e.g.*, *Rapaport*, 2011 WL 1827147, at *2 (discounting the fact the arbitrator had not entered a default judgment against the defendant because the record showed the defendant had failed to pay his fees and the "[l]ack of a formal ruling of default from the arbitrator does not change [the] reality" that "the failure by a party to pay fees in arbitration will prevent that party from successfully moving to compel arbitration in the same case in the future").

Mr. Cahill also cites *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010 (9th Cir. 2004), and *Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884 (5th Cir. 2009), to argue the arbitrators, not the district court, should have made a formal finding of default.

In *Lifescan*, the parties submitted their dispute to AAA arbitration.  363 F.3d at 1011.  A few days before the final hearings, the defendant announced it could not pay its share of fees.  *Id.*  The arbitrators gave the plaintiff the option of advancing the defendant's fees, but it refused.  *Id.*  The AAA suspended the proceedings.  *Id.*  The plaintiff filed a motion to compel arbitration and order the defendant to pay its share of fees under 9 U.S.C. § 4, which the district court granted.  *Id.*  The Ninth Circuit reversed,

holding "the arbitration has proceeded pursuant to the parties' agreement and the rules they incorporated. There was therefore no basis for an order requiring [the defendant] to pay the fees, or compelling arbitration." *Id.* at 1013.

In *Dealer*, the plaintiff sought arbitration and paid its share of fees. 588 F.3d at 886. The defendant notified the AAA it did not have adequate funds to pay. *Id.* The arbitrators asked the plaintiff to pay the defendant's share, but it refused. *Id.* The arbitrators suspended the proceedings. *Id.* The plaintiff filed a motion to compel arbitration and order the defendant to pay its share of fees under § 4, which the district court granted. *Id.* The Fifth Circuit reversed, citing *Lifescan* and stating the "[p]ayment of fees is a procedural condition precedent that the trial court should not review." *Id.* at 887, 889.

*Dealer* and *Lifescan* are distinguishable from our case. First, in both *Dealer* and *Lifescan*, the arbitrators had asked the party that had already paid its share of arbitration fees to pay the fees of the other party, which had refused to pay. *Dealer*, 588 F.3d at 886; *Lifescan*, 363 F.3d at 1011. Rather than do so, the party that had paid its share sought help outside the arbitration proceedings and asked the district court to order the other party to pay. *Dealer*, 588 F.3d at 886; *Lifescan*, 363 F.3d at 1011. Both district courts granted the request. *Dealer*, 588 F.3d at 886; *Lifescan*, 363 F.3d at 1011. But the circuit courts reversed, leaving the issue of how to allocate fee payment to the AAA, which had already decided to ask the paying party to advance the fees for both sides. *Dealer*, 588 F.3d at 888-89; *Lifescan*, 363 F.3d at 1012-13. Here, the AAA did not ask Pre-Paid to advance Mr. Cahill's fees. Instead, it terminated the arbitration. Pre-Paid did not ask the

- 20 -

district court to order Mr. Cahill to pay. Instead, Pre-Paid asked the district court to lift the stay, arguing Mr. Cahill was in default in the arbitration proceedings under § 3. Neither *Dealer* nor *Lifescan* concerned whether a district court could address that issue— whether a party was in default—because it was not a question presented in those cases.[5]

Second, in both *Dealer* and *Lifescan*, the arbitration panels responded to the paying party's refusal to advance the full fees by suspending, rather than terminating the proceedings. *Dealer*, 588 F.3d at 886; *Lifescan*, 363 F.3d at 1011. The parties conceivably could have continued with arbitration; indeed, no one asked the district courts to lift the stay of judicial proceedings. By contrast, the arbitration proceedings

[5] Mr. Cahill cites *Juiceme, LLC v. Booster Juice Ltd. Partnership*, 730 F. Supp. 2d 1276 (D. Or. 2010), to argue only the arbitrators can decide procedural questions. In *Juiceme*, one of the defendants failed to pay its share of the arbitration costs. *Id*. at 1278. The arbitrator terminated the proceedings. *Id*. at 1279. The plaintiffs then sued in district court. *Id*. The defendants moved to dismiss, arguing the plaintiffs' claims were subject to arbitration. *Id*. at 1280. The district court concluded that whether inability to pay precluded arbitration was not for the court to decide. *Id*. at 1283. It distinguished *Sink* in two ways. First, it noted that in its case, "Plaintiffs did not move for an order of default in arbitration nor did an arbitrator have any opportunity to make any finding of default." *Id.* at 1285. Second, "a collateral fee-sharing agreement is at issue here rather than the arbitration agreement itself." *Id*. The arbitration agreement was silent as to costs, so the parties had entered a collateral fee-sharing agreement to split the costs. *Id*. at 1281-82. The parties later disputed this collateral fee-sharing agreement. The court held "the effect, if any, on the parties' arbitration agreement of [the defendant's] inability to continue paying the costs of arbitration as required in a collateral fee-sharing agreement . . . is an issue for the arbitrator rather than the Court." *Id.* at 1285.

We are not convinced *Juiceme* helps Mr. Cahill. *Juiceme*'s first attempt to distinguish *Sink* fails to recognize that *Sink* did not rely exclusively on the arbitrators' formal order of default. Further, as we explain later, we believe the arbitrators here did make a finding of default. *Juiceme*'s second way of distinguishing *Sink* does not apply here because Pre-Paid and Mr. Cahill have no collateral fee-sharing agreement. Their arbitration agreement refers to the AAA rules, which require parties to split costs. Mr. Cahill calls this a "distinction without a difference." Aplt. Br. at 10. But *Juiceme* itself relied on this distinction to distinguish *Sink*. The lack of a collateral fee-sharing agreement here makes our case more analogous to *Sink*.

here were terminated, and there is no indication the AAA has left open the possibility for the proceedings to continue.

We hold in the circumstances of this case that the absence of a formal finding of default by the arbitrators does not preclude the district court from making that determination under § 3.

    c.   *Even if the question of default is left to the arbitrators, the arbitrators here found Mr. Cahill was in default.*

Even assuming the issue of default must be left to the arbitrators, the arbitrators in this case found that Mr. Cahill was in default. Rather than alter the payment schedule, order Pre-Paid to pay Mr. Cahill's share, or relieve Mr. Cahill of his obligation to pay, the arbitrators first suspended and then terminated the proceedings and closed the case. As the district court found, this termination constituted a finding of default because it was the result of Mr. Cahill's failure to pay. *See* App. at 600 ("[A]lthough no order of default was entered, it is difficult to see termination of the proceedings under such circumstances as anything other than a declaration of default."); *id.* at 603 ("It is clear under these circumstances that the arbitrators considered Cahill's failure to pay to be a default in arbitration . . . ."); *see also Garcia*, 2010 WL 3259922, at *3-4 (noting that although the arbitrator did not take the "affirmative action" of entering a default, "[t]here is no other description the Court can find for this self-created situation other than 'default'"); *Rapaport*, 2011 WL 1827147, at *2 (noting that although the arbitrator had not "formally entered an order of default against him due to his inability to pay," the arbitrator's termination of the arbitration for this reason nevertheless constituted a finding of default,

and the "[l]ack of a formal ruling of default from the arbitrator does not change this reality").

Mr. Cahill argues that even if the termination constituted a finding of default, the arbitrators did not know which party had failed to pay and their termination thus could not have been a finding of default against Mr. Cahill specifically. We disagree. The district court did not clearly err in finding the arbitration panel knew of Mr. Cahill's failure to pay. Although the relevant emails were between the Director of ADR Services at the AAA and Mr. Cahill's attorney, the emails permitted the inference that the Director informed the arbitrators of Mr. Cahill's failure to pay. *See* App. at 515 (stating in an email "[i]f payment is not received by the end of the week, Friday, June 21, 2013, I will be advising the arbitrator that the first deposits have not yet been received." (emphasis omitted)); *id*. at 441 (stating in an email from the Director that "[b]y direction of the Panel, we have closed our file").

Even if we assume the arbitrators did not know, the district court could determine for itself, as explained above, which party was in default, as evident from the record. *See Rapaport*, 2011 WL 1827147, at *2 (observing that, although the record was insufficient to determine the correctness of the defendant's contention that the AAA "simply closed the arbitration because neither party paid the arbitration fees," it was "evident from the limited record available" that defendant was responsible for paying the deficient fees "and that the termination resulted from his lack of payment" (emphasis and quotations omitted)); *Brandifino v. CryptoMetrics, Inc.*, 896 N.Y.S.2d 623, 625, 631 (N.Y. Sup. Ct. 2010) (finding party in default as a matter of fact where arbitrators simply closed the

arbitration due to nonpayment, but the opposing party had "attache[d] an AAA invoice" as "evidence that it is Respondent who owes the outstanding fees").[6]

## III. CONCLUSION

We have jurisdiction under 9 U.S.C. § 16(a)(1)(A). We therefore deny the motion to dismiss. The district court did not err in lifting the stay under 9 U.S.C. § 3 because the arbitration "ha[d] been had in accordance with the terms of the agreement" and Mr. Cahill was "in default in proceeding with such arbitration." 9 U.S.C. § 3. We therefore affirm.[7]

---

[6] The AAA rules did not require Pre-Paid to advance Mr. Cahill's payment. *See* App. at 487 ("If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them *may* advance the required payment." (emphasis added)). The fact Pre-Paid could have volunteered to pay Mr. Cahill's share of the fees does not negate that Mr. Cahill was in default. *See Rapaport*, 2011 WL 1827147, at *3 ("[T]he fact that the AAA arbitration rules allow the arbitrator to ask [the plaintiff] whether [the plaintiff] would like to pay in order to prevent termination does not create an obligation for [the plaintiff] to do so, nor does it change the fact that [the defendant] owed the unpaid fees."); *Garcia*, 2010 WL 3259922, at *1 ("Plaintiff could absolve the Defendant of that default but chooses not to. Therefore, the FAA no longer compels us to dismiss or stay this case for arbitration. And we choose not to.").

[7] Our disposition is consistent with the purposes of arbitration:

> [W]hen the purpose of arbitration—to provide a cost-effective and efficient means of resolving a claim—is thwarted by a party's default in failing to pay the required fees[,] the Court believes that the paying party's right to have its dispute adjudicated and not to be unreasonably held at the mercy of a nonpaying party outweighs the strong presumption in favor of arbitration . . . .

*Brandifino*, 896 N.Y.S.2d at 630. Indeed, the party that seeks a stay of federal litigation so as to proceed through arbitration typically "is careful to preserve its right to arbitrate by timely paying the fees required by the arbitration process, by not litigating elsewhere, and by faithfully abiding by the supposedly 'speedy' and 'summary' procedures afforded

- 24 -

to the parties at arbitration." *Garcia*, 2010 WL 3259922, *2. Here, Mr. Cahill originally sought a stay of the district court proceedings to pursue arbitration. But then he failed to meet the AAA's fee requirements. Now he seeks to keep the stay in place for more arbitral proceedings, which he thwarted in the first place.