**AFFIRMED in part; REVERSE and REMAND in part; and Opinion Filed July 30, 2021**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-20-00555-CV**

**RENFRO INDUSTRIES, INC., Appellant**

**V.**

**MARIA ROJAS, Appellee**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-09905**

## MEMORANDUM OPINION

Before Justices Osborne, Pedersen, III, and Nowell
Opinion by Justice Osborne

Appellant Renfro Industries, Inc. appeals the trial court's order granting appellee Maria Rojas's motion for new trial after arbitration of their dispute. We conclude the trial court (1) correctly ruled that the arbitrator's award was no longer final and could not be confirmed by a court, but (2) erred by returning the case to its active docket. Consequently, we affirm in part and reverse in part with instructions to the trial court to remand the case to arbitration.

## BACKGROUND

Rojas was injured in the course of her employment with Renfro. She was working at her regular job operating a press machine on December 22, 2014, when the machine accidentally engaged and struck Rojas's fingers "with such force that she lost part of three fingers and has suffered permanent disfigurement and injuries," as she later alleged in her original petition. She filed suit against Renfro on August 15, 2016, alleging Renfro was negligent and grossly negligent in failing to provide a safe working environment, failing to provide proper guards, cut-off switches, or safety stops on a dangerous machine, and numerous other acts and omissions that were the proximate cause of damages to her.

In her petition, Rojas also asserted claims against Essential Corporate Solutions, Inc. ("ECS"), a human resources company, and Dispute Solutions, Inc. ("DSI"), an arbitration company with the same ownership as ECS. Rojas pleaded that DSI and ECS conspired with Renfro to provide arbitration services without disclosing their financial arrangements and professional relationships with Renfro and its attorney, Gary Sarles. She alleged that Renfro, through DSI, ECS, and Sarles, controlled the entire arbitration process from drafting the arbitration plan, acting as administrator, naming the arbitrators, and representing Renfro in the arbitration. Based on these allegations, Rojas requested an injunction preventing DSI from arbitrating her claim against Renfro.

In an answer signed by Sarles as counsel, Renfro requested a stay of the proceedings to permit arbitration of Rojas's claims as provided in her agreement with Renfro. Renfro sought arbitration with "DSI (or the AAA)." Rojas responded by filing an amended petition on October 12, 2016. She added claims against Renfro for fraud by nondisclosure and fraudulent inducement of the arbitration agreement and provided further detail of the relationships among the defendants. She again sought an injunction preventing DSI from conducting arbitration of her claims against Renfro.

On September 18, 2017, however, the parties and the trial court signed an "Agreed Order Granting Application for Arbitration Order." The trial court recited Renfro's stipulation that DSI "is unable to appoint an arbitrator," and ordered that Rojas "must proceed to binding arbitration before the American Arbitration Association ("AAA") in accordance with the Election [a]nd Arbitration Agreement signed by her and with the AAA's Employment Arbitration Rules and Mediation Procedures."

The parties then proceeded to arbitration before the AAA. The arbitrator ruled that Rojas's claim was barred by limitations because Rojas did not initiate the arbitration proceeding until October 2, 2017, more than two years after her injury. The arbitrator concluded that neither Rojas's initial demand for arbitration nor her timely state court filing tolled the limitations period. The arbitrator signed a final award for Renfro on August 13, 2019, assessing charges of $20,655.00 and AAA

fees of $2,950.00. Rojas timely filed and served a notice of appeal in accordance with the appeal procedures in the arbitration agreement:

8. Appeal Procedures: The Company and I further agree as follows:

a. Any party may appeal any arbitration award that has been rendered and become final under the rules governing the arbitration. The written appeal must be served in writing on the other party or parties to the arbitration and . . . on the [AAA] by certified mail within thirty (30) days after the hearing arbitrator caused the arbitration award to be mailed to the parties or to their representatives. The writing evidencing the appeal must specify those elements of the arbitration award that are being appealed and must contain a short statement of the appeal's basis. **Once an appeal is timely served, the arbitration award by the hearing arbitrator shall no longer be considered final for purposes of seeking judicial enforcement, modification or vacation under the Federal Arbitration Act.** [Emphasis added]

In an email dated October 2, 2019, Mary Jara of AAA confirmed that the AAA received Rojas's notice on September 12, 2019. Jara requested that Renfro pay the $6,000 filing fee for the appeal on or before October 16, 2019, and stated that on receipt of the filing fee the AAA would proceed with administration. Renfro refused to pay the fee, citing the arbitration agreement's provision in paragraph 8.d that if only one party appealed the arbitrator's award, then "the fees and expenses of the appellate arbitrators shall be paid by the appellant party" and requiring the appellant party to "deposit funds or post other appropriate security for the appellate arbitrators' fees, in an amount and manner determined by . . . [the AAA] within thirty (30) days after that party's service of an appeal." Rojas filed her AAA "Affidavit in Support of Administrative Fees Hardship Waiver" and argued that she could not afford to

–4–

pay either the $6,000 filing fee or the charges for three appellate arbitrators that could exceed $60,000.

On Tuesday, October 22, 2019, after the parties had submitted numerous emails on the subject of the fees, Jara wrote them:

> Good Afternoon:
>
> This will confirm receipt of the parties' emails. The AAA will bill the employer the appellate filing fee for cases between an individual employee and a business or organization and for any dispute that involves work or work-related claims.
>
> If the parties disagree with the AAA's assessment of the filing fee this issue will need to be raised to the panel upon appointment.
>
> Sincerely,
> Mary

Renfro then filed a motion to confirm the arbitrator's award in the trial court, alleging the award was final because Rojas had failed to pay "the required appellate fees and costs." A visiting judge heard the motion on February 17, 2020, during which Renfro represented to the court that the AAA had dismissed Rojas's appeal. The visiting judge rendered a final judgment on February 25, 2020, confirming the award and ruling that Rojas take nothing on her claims.

Rojas filed a motion for new trial and requested sanctions against Renfro for filing a frivolous motion to confirm. Rojas attached evidence that included a screen shot of the AAA's case-management system showing the status of the case as "active" with the AAA on March 17, 2020. The trial court granted Rojas's motion for new trial, vacated the February 25, 2020 judgment, and made findings of fact and

conclusions of law in its May 8, 2020 "Order on Plaintiff's Motion for New Trial" ("Order").

This appeal followed. In three issues, Renfro argues (1) the August 13, 2019 arbitration award is final and must be confirmed, (2) there is no basis under the Federal Arbitration Act ("FAA")[1] to deny confirmation of the final award or to vacate the award, and (3) the trial court had "no legal or factual basis" for reversing the prior order compelling arbitration, lifting the stay, or retaining the matter for further proceedings on the merits in the trial court.

## STANDARD OF REVIEW

The trial court's Order vacated its prior judgment confirming the arbitration award. Under these circumstances, the FAA permits an appeal, and the parties agree that the FAA applies to this case. 9 U.S.C.A. § 16(a)(1)(D), (E) (appeal may be taken from an order "confirming or denying confirmation of an award" or "modifying, correcting, or vacating an award"); TEX. CIV. PRAC. & REM. CODE § 51.016 (permitting appeal of interlocutory order in matter subject to FAA); *Baylor Univ. Med. Ctr. v. Greeson*, No. 05-14-01342-CV, 2015 WL 4397758, at *2–3 (Tex. App.—Dallas July 20, 2015, no pet.) (mem. op.) (order retaining trial court control over merits discovery was affirmative denial of motion to compel arbitration "over at least a portion of the proceeding which the parties agreed the arbitrator has

---

[1] *See* 9 U.S.C.A. §§ 1–16 (Federal Arbitration Act, Chapter 1, General Provisions).

authority"); *Salas v. GE Oil & Gas*, 857 F.3d 278, 280 (5th Cir. 2017) (order withdrawing court's prior order granting motion to compel arbitration and reopening case was appealable under FAA § 16(a)(1)(C), which permits appeal from an order denying an application to compel arbitration). A trial court's ruling confirming or vacating an arbitration award is subject to de novo review based on the entire record. *Cambridge Legacy Grp., Inc. v. Jain*, 407 S.W.3d 443, 447 (Tex. App.—Dallas 2013, pet. denied).

### DISCUSSION

In the trial court's September 18, 2017 order, the parties agreed that Rojas "must proceed to binding arbitration before the American Arbitration Association ("AAA") in accordance with the Election [a]nd Arbitration Agreement signed by her and with the AAA's Employment Arbitration Rules and Mediation Procedures." Consequently, those sources govern our review. *See, e.g., Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 525 (Tex. 2019) (arbitration is a matter of contract between the parties; arbitration agreements are contracts that must be enforced according to their terms).

### A. Confirmation of award

In its first issue, Renfro argues that the arbitrator's August 13, 2019 arbitration award is final and must be confirmed. In its second issue, Renfro argues that there is no valid basis under the FAA for vacating or denying confirmation of the award. These issues arise from Renfro's contention that Rojas failed to perfect her appeal

in the arbitration proceedings because she failed to pay the appellate arbitration fee. We conclude Renfro's arguments are inconsistent with the language of its agreement to arbitrate.

Renfro does not dispute that Rojas's notice of appeal was timely filed and served. Under the parties' agreement, "Once an appeal is timely served, the arbitration award by the hearing arbitrator shall no longer be considered final for purposes of seeking judicial enforcement, modification or vacation under the Federal Arbitration Act." The agreement requires only that the appeal "is timely served" before the award "shall no longer be considered final for purposes of seeking judicial enforcement."

The parties do not cite authority interpreting a similar provision, and we have found none. Renfro contends the trial court lacked authority to deny confirmation of the award "unless one of the limited grounds for vacating an award under Section 10 of the FAA is proven," such as the arbitrator's evident partiality or other specific misconduct. *See* FAA §§ 9, 10 (confirmation of awards and grounds for vacating). Renfro relies on cases holding that judicial review of arbitration awards is "exceedingly deferential" and "extraordinarily narrow." *See, e.g., E. Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010) ("Because Texas law favors arbitration, judicial review of an arbitration award is extraordinarily narrow." [footnotes omitted]); *Myer v. Americo Life, Inc.*, 232 S.W.3d 401, 407–08 (Tex.

App.—Dallas 2007, no pet.) (same). This is indeed the general rule. *See Myer*, 232 S.W.3d at 407–08.

But in this case, the parties' own arbitration agreement provides that once a notice of appeal is timely served, there is no longer a final award to be enforced. Although Renfro contends that "a common-sense examination reflects that the true intent of the parties" was to require both a notice of appeal and payment of the fee to perfect the appeal, Renfro concedes that "the contract does not expressly state that failure to pay the appellate arbitration fees and costs will not delay judicial enforcement." Instead, paragraph 8.a provides that the arbitration award "shall no longer be considered final" "[o]nce an appeal is timely served." Fees are addressed in separate subparagraph 8.d and are paid at a different time. Unlike paragraph 8.a, paragraph 8.d does not contain any provision regarding finality of the award.

Rojas, in turn, relies on *Lincoln v. C&N Group, Inc.*, No. 05-97-00114-CV, 1997 WL 672626, at *3 (Tex. App.—Dallas Oct. 30, 1997, no pet.) (not designated for publication). In that case, the parties agreed to a two-tiered process of arbitration that included a de novo appeal from the first arbitration decision. *Id.* at *2. After the Lincolns obtained a favorable ruling from the initial arbitration proceeding, they filed a motion to confirm the award and to quash the second hearing. *Id.* at *1. The trial court denied the motion to confirm. *Id.* We concluded the trial court did not err in refusing to confirm the arbitration award, explaining that "[t]he Lincolns agreed to the two-tiered process of arbitration; they cannot now seek to enforce part of their

–9–

agreement while attempting to repudiate that which they find unfavorable. Pursuant to their contract, they must complete the arbitration process before seeking redress in the courts." *Id.* at *3.

Renfro distinguishes *Lincoln* on the ground that "[t]he parties' agreement in this case does not contain a similar provision" requiring a two-tiered process, arguing that an appeal under the parties' agreement here is optional. But Rojas did file a notice of appeal to invoke the AAA's appellate process, and the parties' agreement specifically addresses that contingency.

The parties' arbitration agreement expressly provides that "[o]nce an appeal is timely served," the arbitrator's award "shall no longer be considered final." Because Renfro timely served her appeal in accordance with the arbitration agreement, we decide Renfro's first and second issues against it.

## B. Return to trial court's active docket

In its third issue, Renfro contends the trial court erred by returning the case to its active docket for further proceedings. Renfro argues that a court cannot "intervene into the arbitral process" and that a court's actions are limited to determining whether an arbitration agreement exists and enforcing that agreement, citing *Salas v. GE Oil & Gas*. *See Salas*, 857 F.3d at 281. In *Salas*, the district court initially granted an employer's motion to compel arbitration, but later reopened the case and withdrew its prior order. *Id.* at 279. Arbitration had never commenced, and each side blamed the other for the delay. *Id.* Although the employee then moved to

compel arbitration, the district court instead reopened the case and withdrew its earlier order compelling arbitration. *Id.* The court of appeals reversed, concluding that the district court's order reinstating the case "did not fall within the narrow scope" of a district court's ancillary jurisdiction "to intervene into the arbitral process prior to the issuance of an award." *Id.* at 281 (internal quotation omitted). The court explained that "[e]ven if some default occurs in the arbitral process, courts may not intervene beyond the determination as to whether an agreement to arbitrate exists and enforcement of that agreement." *Id.* (internal quotation omitted). Relying on *Salas*, Renfro argues that the trial court's order does not determine or address the existence or enforcement of an arbitration agreement, and there are no grounds under the FAA for the trial court's intervention, denial of arbitration, and retention of the case on its docket.

Rojas responds that Renfro breached and repudiated the arbitration agreement by refusing to pay the AAA's fees for appeal, and as a result, the trial court could return the case to its docket. *See* FAA § 3 (court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, *providing the applicant for the stay is not in default in proceeding with such arbitration*" [emphasis added]). Rojas relies on several cases holding that a party's failure to pay arbitration fees constituted a default or repudiation of an agreement to arbitrate. *See Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1011 (9th Cir. 2005); *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003); *Fagan v. Warren Averett*

–11–

*Cos. LLC*, No. 1190285, 2020 WL 6252771, at *8 (Ala., Oct. 23, 2020) (not yet released for publication).

Renfro counters that *Brown* and *Fagan* address an employer's failure to pay an initial filing fee, not appellate fees. *See Brown*, 430 F.3d at 1008–09 (AAA "returned Brown's notice of intent to arbitrate" when her employer refused to respond to the AAA's letters or pay its share of the filing fee); *Fagan*, 2020 WL 6252771, at *3 (AAA notified the parties it was administratively closing the file in the matter because the employer had failed to submit the requested filing fee). Although Renfro does not address it, the *Sink* case may be distinguished on the same basis. *See Sink*, 352 F.3d at 1198–99 (arbitrator signed order of default after employer failed to pay required fees to initiate arbitration). In these cases, no arbitration proceedings ever took place.

Rojas also cites *Pre-Paid Legal Services, Inc. v. Cahill*, 786 F.3d 1287 (10th Cir. 2015), in support of her argument that the trial court did not err by returning her case to its docket. In *Cahill*, a former employee requested and obtained a stay of litigation under FAA section 3 pending arbitration of his former employer's claims against him for tort and contract violations. *Id.* at 1287–88. But Cahill failed to pay his share of the arbitration fees, and after a warning, the AAA arbitration panel terminated the arbitration. *Id.* at 1288–89. The trial court granted the employer's motion to lift the litigation stay, and the court of appeals affirmed. *See id.* at 1299. The court of appeals explained,

> The AAA determined the arbitration had gone as far as it could due to Mr. Cahill's repeated refusal to pay the fees. Under the AAA rules, the panel terminated the proceedings. As such, the arbitration "ha[d] been had in accordance with the terms of the agreement," 9 U.S.C. § 3, removing the § 3 requirement for the district court to stay the proceedings.

*Id.* at 1294. The court further concluded that lifting the stay was proper because Cahill was "in default in proceeding with [the] arbitration" by failing to pay the required fees. *Id.* (internal quotation marks omitted).

In all of these cases, no arbitration proceeding had ever commenced. In *Salas*, the parties returned to the trial court before arbitration commenced. *See Salas*, 857 F.3d at 279. In *Cahill*, as in *Brown*, *Fagan*, and *Sink*, the AAA gave the parties notice and terminated the arbitration before proceedings began. *See Cahill*, 786 F.3d at 1294; *Brown*, 430 F.3d at 1008–09; *Fagan*, 2020 WL 6252771, at *3; *Sink*, 352 F.3d at 1198–99. The AAA has given no such notice here. Arbitration proceedings have commenced. Further, the AAA has informed the parties that their dispute about the fees for appeal would "need to be raised to the panel upon appointment." Under these circumstances, the trial court erred by returning the case to its active docket.

The parties agreed to arbitrate their dispute. As we have discussed, the arbitration has not been completed. Consequently, we sustain Renfro's third issue.[2]

---

[2] Given this conclusion, we need not discuss the portion of Renfro's third issue complaining that Rojas did not meet her burden of proof under civil procedure rule 324. *See* TEX. R. CIV. P. 324(b)(1) (motion for new trial based on newly discovered evidence).

We reverse the portion of the trial court's order returning the case to its active docket, and remand to the trial court with instructions to remand the case to arbitration.

## CONCLUSION

We affirm the portion of the trial court's order ruling that the arbitrator's award was no longer final and could not be confirmed by a court. We reverse the portion of the trial court's order returning the case to its active docket. We order the trial court to remand the case to the American Arbitration Association for further proceedings.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

200555F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

RENFRO INDUSTRIES, INC.,
Appellant

No. 05-20-00555-CV     V.

MARIA ROJAS, Appellee

On Appeal from the 101st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-16-09905.
Opinion delivered by Justice
Osborne. Justices Pedersen, III and
Nowell participating.

In accordance with this Court's opinion of this date, the trial court's May 8, 2020 "Order on Plaintiff's Motion for New Trial" is **AFFIRMED** in part and **REVERSED** in part. We **AFFIRM** the portion of the Order denying confirmation of the August 13, 2019 arbitration award. We **REVERSE** that portion of the trial court's Order returning the case to its active docket. We **REMAND** this cause to the trial court and **ORDER** the trial court to remand the case to the American Arbitration Association for further proceedings.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered July 30, 2021