[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 17-13057; 17-13673
_____

D.C. Docket No. 1:15-cv-23486-FAM

JULIO HERNANDEZ HERNANDEZ,
and all others similarly situated under 29 U.S.C. 216(B),

Plaintiff - Appellee,

versus

ACOSTA TRACTORS INC.,
FELIX F. ACOSTA,
ALEX ROS,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(August 8, 2018)

Before WILLIAM PRYOR and MARTIN, Circuit Judges, and HALL,[*] District Judge.

MARTIN, Circuit Judge:

This case asks us to consider whether a District Court can properly enter a default judgment based on a party's failure to pay arbitration fees. Acosta Tractors Inc. and two of its officers, Felix Acosta and Alex Ros (collectively "Acosta") appeal the District Court's entry of a default judgment against them after they failed to pay their required arbitration fees in a dispute with Julio Hernandez, who had worked for them. Mr. Hernandez brought suit against Acosta in federal court on behalf of himself and others similarly situated, seeking unpaid wages under the Fair Labor Standards Act ("FLSA"). Acosta asked the District Court to dismiss the suit and compel arbitration based on an arbitration clause in Mr. Hernandez's employment contract, which the District Court did. But arbitration did not proceed as planned. Acosta eventually stopped paying its arbitration fees and asked the District Court to allow the case to come back to court. The District Court declined. Instead, it entered a default judgment against Acosta based solely on its failure to pay its arbitration fees. After careful consideration, and with the benefit of oral argument, we vacate the District Court's order and remand for further proceedings.

---

[*] Honorable James Randal Hall, United States Chief District Judge for the Southern District of Georgia, sitting by designation.

I.

Mr. Hernandez worked as a laborer for Acosta Tractors from around May 26, 2009 to August 26, 2015.[1]  When Mr. Hernandez began working for Acosta he was given an employee handbook that contained "Assigned Employee Acknowledgements," which he signed.  This acknowledgement contained an arbitration clause stating that any dispute relating to wages "will be resolved exclusively through binding arbitration."

On September 17, 2015, Mr. Hernandez filed suit against Acosta.  He said Acosta violated the FLSA by failing to pay his overtime wages.  More specifically, Mr. Hernandez said he had not been paid for the time he spent loading and unloading trucks each day.  He sought compensation for an average of 15 hours of unpaid overtime per week for a period of almost four years.  Mr. Hernandez's complaint was nearly identical to two other lawsuits that had been filed by his attorney against Acosta, one in 2012 and one in 2013.  Both of those suits, like Mr. Hernandez's, were dismissed pending arbitration.

It was Acosta that moved to dismiss or stay Mr. Hernandez's suit and compel arbitration, based on the arbitration agreement Hernandez had signed.  Mr. Hernandez opposed the motion, arguing that the arbitration clause was

---

[1] Mr. Hernandez was first hired through a labor supplier, Strategic Outsourcing, Inc. Neither party argues that this fact impacts Acosta's liability for his wages under the FLSA.

3

unenforceable.  The District Court granted the motion to compel arbitration and ordered the case closed.

We don't have a clear record of what happened in the arbitration.  Both parties have referred to some filings and decisions from the arbitration, but the record was never filed in the District Court or on appeal.  Acosta tells us that once Mr. Hernandez's case was sent to arbitration, it moved to consolidate the Hernandez case with the two other cases filed by Mr. Hernandez's attorney on behalf of Acosta employees seeking unpaid overtime.  The arbitrator declined to consolidate the cases.  Acosta also says the arbitrator allowed extensive discovery to be taken, with 29 depositions conducted in the three separate arbitration proceedings to which it was a party.  Acosta says it spent $33,100 in the other arbitrations and then was billed for an additional $43,640.  Acosta then got yet another bill for $25,875 in Mr. Hernandez's arbitration.  Acosta says this "bring[s] the total estimated forum fees for a simple FLSA issue to over $100,000.00."

About a year after the District Court had closed the case, Acosta moved to re-open it, asked that the stay be lifted, and that Mr. Hernandez's case be consolidated "with earlier and later-filed nearly identical matters" before the District Court. Acosta said "the Arbitration in this matter has failed of its essential purpose." Acosta went on: "Arbitration is meant to be a less costly and efficient substitute for litigation.  In these cases, arbitration has instead turned into an overly-expensive,

4

completely inefficient method of dispute resolution." Acosta said "[t]he arbitrators' fees alone likely exceed the amount in controversy, exclusive of attorneys' fees."

In a one page order, the District Court rejected Acosta's request. Acosta moved for reconsideration. Acosta told the court that since its original motion, the arbitrator had suspended proceedings in the related cases because Acosta had not paid the required fees. Acosta argued that "[t]o allow this matter to remain in arbitration will necessitate duplicate proceedings with the same parties and witnesses with forum fees that exceed the amount in controversy."

Mr. Hernandez responded by seeking entry of a default against Acosta. Mr. Hernandez said Acosta had waived its right to enforce the arbitration agreement. And rather than seeking a lifting of the stay, Mr. Hernandez argued the District Court should enter a default judgment against Acosta because "the Defendants vexatiously caused unnecessary arbitration proceedings" and "in bad faith refused to arbitrate." Mr. Hernandez also asked for a jury trial on his claims for damages and sanctions. The District Court denied both Acosta's and Mr. Hernandez's motions as premature, noting that "[t]he arbitrator ha[d] not formally terminated the arbitration in this matter."

A few months later, Acosta was back in court. It filed a new motion to reopen the cases against it, lift the stay, and consolidate the three cases that had been in arbitration. Acosta said "[t]he [arbitrator] has now suspended this matter

also, and Defendants, waiving their right to arbitrate, seek to return to this court for consolidation and trial, so that these aged disputes [may] finally be resolved." The District Court denied Acosta's renewed motion. Soon, the District Court entered a default judgment against Acosta. The court noted that Acosta's "failure to pay the arbitration fees constitutes a default under the Federal Arbitration Act, 9 U.S.C. § 3." The court continued:

> Based on the arbitrator's cancellation of this proceeding, the defendant's admission that it refused to pay the costs because they had escalated, and the precedent stating courts retain the right to enter default, this Court enters default judgment against the Defendants. This remedy is appropriate as the Defendants did not provide evidence establishing their inability to pay the costs of arbitration or showing they attempted to establish a payment plan.

The court directed Mr. Hernandez to file an affidavit setting out the amount of damages due.

Mr. Hernandez filed an affidavit requesting $7,293 in damages for unpaid overtime and liquidated damages, as well as additional attorney's fees. Mr. Hernandez's affidavit estimated that he "was not paid anything for at least an average of (8–9) hours of overtime per week." He said these hours came from "loading/unloading and preparation duties that were not included on the sign-in sheet." Acosta asked for reconsideration of the default judgment. Acosta attached Mr. Hernandez's deposition, taken in a related case, and argued that Mr. Hernandez's sworn testimony in the two documents was contradictory. The District

Court denied the motion for reconsideration. The court also entered a final default judgment, awarding Mr. Hernandez the $7,293 he asked for.

A few weeks later, Mr. Hernandez filed a copy of the order terminating the arbitration, which had been signed by the arbitrator after the District Court entered its default judgment. The order from the arbitrator said the parties had failed to make their required payments by the deadline, and as a result, the arbitration proceeding was terminated. This appeal followed.

II.

Arbitration agreements contained in employment contracts are generally enforceable. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119, 121 S. Ct. 1302, 1311 (2001). We are aware that the inclusion of arbitration agreements in employment contracts is becoming increasingly widespread. See Epic Systems Corp. v. Lewis, 584 U.S. ___, 138 S. Ct. 1612, 1644 (2018) (Ginsburg, J., dissenting) (collecting data). The idea is that employers prefer arbitration because it promises "quicker, more informal, and often cheaper resolutions for everyone involved." Id. at 1621 (majority op.). But as this case shows, arbitration does not always live up to this promise.

At root, "arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339, 131 S. Ct. 1740, 1745 (2011) (quotation omitted). And the Federal Arbitration Act ("FAA") requires courts to "place arbitration

agreements on an equal footing with other contracts and enforce them according to their terms." Id. (citations omitted).  In keeping with this principle, Section 3 of the FAA requires courts to stay a case that is covered by a binding arbitration clause so it may proceed in arbitration.  9 U.S.C. § 3.  But a court is only required to grant a motion for a stay so long as "the applicant for the stay is not in default in proceeding with such arbitration."  Id.

Here, Acosta asked the District Court to stay Mr. Hernandez's case so that arbitration could proceed.  The District Court obliged.  So far, this was how things were supposed to work under the terms of Mr. Hernandez's arbitration agreement and Section 3 of the FAA.  Once Acosta defaulted in the arbitration, the District Court would have been within its power to find that Acosta could no longer require Mr. Hernandez to proceed in arbitration.  See id.  But this District Court went further.  The District Court determined that Acosta's default in the arbitration proceedings also warranted the entry of a default judgment against it in federal court.  This was error.[2]

The District Court cited Section 3 of the FAA as authority for its decision to

---

[2] Because the basis upon which the District Court made its decision is not clear, the proper standard of review is debatable.  Acosta argues we should review the District Court's decision de novo, citing to Federal Rule of Civil Procedure 55.  Mr. Hernandez does not explicitly address the standard of review but discusses the District Court's decision as a sanction based on Acosta's "abuse of the arbitration process."  We review sanction orders for abuse of discretion.  Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1237 (11th Cir. 2007).  Ultimately, because the District Court misapprehended the requirements of Section 3, it erred under either standard.

enter a default judgment against Acosta. But Section 3 only concerns when a court must compel arbitration. It says nothing about what a court should do when the party that first asked the court to compel arbitration now wants to come back to court.

The cases relied on by the District Court in support of its decision to enter a default judgment against Acosta don't give guidance for these facts either. In Pre-Paid Legal Services, Inc. v. Cahill, 786 F.3d 1287 (10th Cir. 2015), the Tenth Circuit held that a failure to pay arbitration fees qualified as a default under Section 3, and allowed the dispute to come back to court. Id. at 1294. The Ninth Circuit reached a similar result in Sink v. Aden Enterprises, Inc., 352 F.3d 1197 (9th Cir. 2003). In Sink, the court held that an employer's failure to pay arbitration fees qualified as a default in arbitration, such that the District Court was not required to compel arbitration again under Section 3. Id. at 1200. But in neither of these cases did the courts equate a default in arbitration with a default judgment to be entered by the court.

We find no basis in the FAA, the caselaw, or anywhere else to support a court's decision to enter a default judgment solely because a party defaulted in the underlying arbitration. The District Court therefore erred in doing so.

We do not rule here that a court has no authority to enter a default judgment based on a party's failure to fulfill its obligations in the arbitration process.

9

Certainly, the Federal Rules of Civil Procedure give courts authority to enter default judgments or dismissals as sanctions.  See, e.g., Fed. R. Civ. P. 11(b)(1), (c) (providing for sanctions based on papers "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"); Fed. R. Civ. P. 37(b)(2)(A)(vi) (providing for the entry of a default judgment against a party who violates a discovery order); Fed. R. Civ. P. 41(b) (providing for dismissal when a plaintiff "fails to prosecute or to comply with these rules or a court order").

And beyond the federal rules, "[c]ourts have the inherent power to police those appearing before them."  Purchasing Power, LLC v. Bluestem Brands, Inc., 851 F.3d 1218, 1223 (11th Cir. 2017).  This includes the power "to fashion an appropriate sanction for conduct which abuses the judicial process."  Id. (quotation omitted).  But in order for a court to impose a sanction pursuant to its inherent authority, it must make a finding that the sanctioned party acted with subjective bad faith.  Id. at 1224.  And such a bad faith finding must be made in compliance "with the mandates of due process," requiring fair notice and an opportunity to be heard.  See Kornhauser v. Comm'r of Soc. Sec., 685 F.3d 1254, 1257 (11th Cir. 2012).

On remand, the District Court may well find that Acosta acted in bad faith in choosing not to pay its arbitration fees.  After all, Acosta acknowledges it quit paying after the arbitrator failed to consolidate Mr. Hernandez's case with the other

cases brought by other Acosta employees, and because it thought the arbitrator had allowed too much discovery.  Acosta also noted that arbitration was set to cost more than Mr. Hernandez's claim was worth.  A calculated choice to abandon arbitration after getting adverse rulings from the arbitrator certainly looks like forum shopping.  And this type of behavior would surely be a factor the District Court could consider in deciding whether to sanction Acosta by entering a default judgment.  At the same time, a party's good faith inability to afford the arbitration fees would be a factor properly considered to weigh against such a sanction.  See Tillman v. Tillman, 825 F.3d 1069, 1074 (9th Cir. 2016) (finding that plaintiff's inability to pay arbitration fees was "not culpable and so does not merit a harsh penalty, particularly given the public policy favoring disposition of cases on their merits" (quotation omitted)).  Here, we give it to the District Court to make the findings about how to proceed in the first instance.

Acosta also argues the District Court erred in awarding damages without holding an evidentiary hearing and in awarding costs.  And anticipating that this Court might vacate the District Court's judgment, Acosta asks that we order the related cases to be consolidated.  We decline the invitation.  Because we conclude the District Court erred in entering a default judgment against Acosta based solely on Acosta's default in the underlying arbitration, we do not reach these other arguments.  On remand, Acosta is free to seek consolidation in the District Court.

11

**VACATED AND REMANDED.**