[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10380

_____

D.C. Docket No. 6:17-cv-00938-GAP-GJK

LAWREN FREEMAN,

Plaintiff-Appellee,

versus

SMARTPAY LEASING, LLC,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 3, 2019)

Before MARCUS, GRANT and HULL, Circuit Judges.

HULL, Circuit Judge:

Defendant SmartPay Leasing, LLC ("SmartPay") appeals the district court's order granting Plaintiff Lawren Freeman's motion to vacate the order referring the case to arbitration, lifting the stay of litigation, and directing the clerk to reopen the case.

## I.  FACTUAL BACKGROUND

To place this interlocutory appeal in context, SmartPay purchases smartphones and provides them to its customers on a lease-to-own basis. SmartPay enters into a written lease-purchase agreement with every customer. Each SmartPay customer must digitally sign the lease-purchase agreement and agree to its terms and conditions before receiving a smartphone from SmartPay.

In February 2015, Plaintiff Freeman entered into a lease-purchase agreement with SmartPay,[1] in which Freeman agreed to lease, with an option to purchase, a Samsung Galaxy S5 smartphone.

### A.    The Parties' Arbitration Agreement

In their lease-purchase agreement, Freeman and SmartPay agreed that "any claim or dispute arising from or in any way related to the [lease-purchase agreement] must be resolved by binding arbitration instead of a lawsuit."  Freeman

---

[1]SmartPay was formerly a division of BillFloat, Inc.  BillFloat spun off the SmartPay business into a separate company and assigned certain BillFloat lease agreements, including the lease-purchase agreement between BillFloat and Freeman, to SmartPay.

2

had the right to opt out of binding arbitration within ten days of signing the lease-purchase agreement, but she did not do so.

The parties "agree[d] to use one of the two national arbitration organizations and their rules for conducting arbitrations," which are identified in the agreement as the American Arbitration Association ("AAA") and JAMS, the Resolution Experts. The agreement provided that the party bringing the claim could choose to file it with either AAA or JAMS. If SmartPay brought a claim against Freeman, Freeman had the right to choose the other arbitration organization within 30 days after receiving notice of SmartPay's forum choice.

Further, the agreement specified that if Freeman filed a claim, Smartpay would pay the filing fee as follows:

> If [Freeman] file[s] a claim against [SmartPay], [SmartPay] will pay the initial filing fee. Each party must pay its own attorneys' fees and other costs of the arbitration. However, the arbitrator can award reasonable attorneys' fees and costs to the party who wins the arbitration.

## B.    Freeman's Suit

In June 2017, Freeman filed an amended complaint in federal district court against SmartPay, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and Florida law based on SmartPay's "robocalls" to Freeman's cell phone. Freeman claimed that SmartPay made at least 250 "robocalls" to her cell phone using an "automatic telephone dialing system" that made use of an artificial or

3

prerecorded voice.  Freeman stated that she demanded that SmartPay stop placing "robocalls" to her cell phone and revoked any consent she may have given to SmartPay to call her.

Shortly thereafter, the parties filed a joint motion to stay and to refer the entire case to binding arbitration, under which they stipulated that "this cause is subject to arbitration pursuant to the Lease-Purchase Agreement Terms and Conditions entered into by the Parties."  In July 2017, the district court granted the motion and stayed the case pending arbitration.

## C.     JAMS Arbitration

Freeman selected JAMS as the arbitration forum and, on August 7, 2017, she filed a demand for arbitration with JAMS, using a standard form supplied by JAMS.

On the very first page of JAMS's form, JAMS set forth its requirement that the initial filing fee of $1,200 must be paid in full, of which the consumer pays only $250, as follows:

> For two-party matters, the filing fee is $1,200 . . . . The entire filing fee must be paid in full to expedite the commencement of the proceedings. Thereafter, a Case Management Fee of 12% will be assessed against all Professional Fees, including time spent for hearings, pre- and post-hearing reading and research and award preparation.  For matters involving consumers, the consumer is only required to pay $250 . . . .

On JAMS's form, Freeman checked the box to indicate that her matter was a "consumer arbitration."  JAMS defined "consumer arbitration" to be: "an

4

arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets [three] criteria . . . (1) [t]he contract is with a consumer party . . .; (2) [t]he contract was drafted by or on behalf of the non-consumer party; and (3) [t]he consumer party was required to accept the arbitration provision in the contract."

In addition, JAMS's form stated that JAMS is guided by its Consumer Minimum Standards when determining whether a matter is a consumer matter. JAMS's Consumer Minimum Standards state that JAMS will administer arbitrations pursuant to mandatory pre-dispute arbitration clauses between companies and consumers only if the contract arbitration clause and specified applicable rules comply with its own minimum standards. One of JAMS's listed Consumer Minimum Standards includes the following about the costs of arbitration:

> [W]hen a consumer initiates arbitration against the company, the only fee required to be paid by the consumer is $250 . . . . All other costs must be borne by the company including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's services.

On August 11, SmartPay wrote to JAMS to express its view that the instant arbitration did not meet the requirements for a consumer arbitration under JAMS's rules. SmartPay argued that, pursuant to the parties' arbitration agreement, Freeman had the right to opt out of arbitration and, therefore, the arbitration clause was not mandatory, which indicated that their dispute was not a consumer

5

arbitration under JAMS's standards.  Further, SmartPay stated that its arbitration

agreement provided that SmartPay would pay the filing fee and that this diverges

from JAMS's Consumer Minimum Standards, which require the consumer to pay

$250 of the $1,200 fee, as follows:

> The JAMS Consumer Minimum Standards state that JAMS will administer arbitrations between companies and consumers only if the contract arbitration clause complies with the standards stated therein. Standard number 7 states:
>
> 7.  With respect to the cost of the arbitration, when a consumer initiates arbitration against the company, the only fee required to be paid by the consumer is $250 . . . . All other costs must be borne by the company . . . .
>
> The parties' arbitration provision specifies the costs to be borne by each party.  It states that if [Freeman] files a claim against SmartPay, SmartPay will pay the initial filing fee, but that each party must otherwise cover its costs of arbitration, including attorneys' fees (except that the arbitrator may award fees to the prevailing party).  This obviously diverges from the minimum standard in the rules.

On August 22, a representative of JAMS responded with an e-mail to

SmartPay, stating that the claim—filed by a consumer against a corporation—

would be governed by JAMS's Consumer Minimum Standards.  JAMS stated that

Freeman had paid $250 of the filing fee and, therefore, SmartPay had to pay the

remaining $950 of the filing fee.  SmartPay never paid the $950; instead the

following correspondence ensued.

On September 5, a second representative from JAMS sent SmartPay a letter,

stating that JAMS had reviewed the parties' correspondence and that:

6

> [JAMS's] policy is that consumers should not be required to pay any portion of an arbitration fee (above $250) that is imposed through an arbitration clause which is required as a condition of the purchase/lease of goods for personal use and where the consumer then has to take affirmative action to opt-out of the arbitration clause.

JAMS acknowledged that this policy might go further than the law requires, but that JAMS provides additional protections to consumers where the clause is not negotiated and the transaction is for personal use.

The JAMS representative stated that JAMS would not administer the claim unless SmartPay agreed to waive the provisions of the parties' agreement that were contrary to JAMS's Consumer Minimum Standards. The JAMS representative also noted that the parties were "free to raise any additional questions regarding the application of the [Consumer] Minimum Standards with the Arbitrator, once appointed, and may participate in any strike and rank process without waiving any objections."

On September 15, SmartPay responded to JAMS, indicating that it would not agree to waive the provisions of the parties' agreement that were contrary to JAMS's Consumer Minimum Standards. SmartPay stated that it understood, based upon JAMS's letter, that JAMS would not administer the claim and that it must be dismissed. However, SmartPay noted that the parties' agreement permitted Freeman to utilize either JAMS or AAA, and it therefore presumed that the claim would be refiled with AAA.

7

On September 18, SmartPay received an e-mail from a JAMS representative, who acknowledged SmartPay's position.  JAMS offered to refund Freeman's filing fee if the parties decided to use a different arbitration provider.  However, JAMS noted that AAA has its own set of consumer arbitration rules, and it understood that AAA has a similar process regarding payment of fees.  JAMS requested that SmartPay inform JAMS how SmartPay intended to proceed within 30 days.

On October 7, SmartPay received an invoice for $950 from a third representative at JAMS.  In response, on October 9, SmartPay sent an e-mail seeking confirmation from JAMS that payment of the invoice was unnecessary.  Within minutes, a JAMS representative sent an e-mail to both parties, responding that it had not received formal confirmation from the parties that JAMS would not administer the arbitration.

On October 11, Freeman responded to JAMS, agreeing with JAMS that the Consumer Minimum Standards were applicable, as the dispute was a consumer matter.  Freeman stated that it appeared that SmartPay had decided not to honor its agreement to follow the rules set forth by JAMS and had stated that SmartPay would not pay the amounts required of it for JAMS to conduct the arbitration.  Therefore, in light of SmartPay's refusal, Freeman recognized that JAMS had little choice but to dismiss the arbitration due to SmartPay's failure to pay.  She requested that JAMS forward an order of dismissal for her records that

8

documented that reason for dismissal.  Also, Freeman stated that SmartPay's assumption that she would refile with AAA was unwarranted, noting that she did not intend to reward SmartPay for its noncompliance with the arbitration agreement through a change to its apparently favored venue.

On October 19, the parties received a letter from JAMS confirming that the file would be closed.  The letter stated that "[w]e have made multiple requests for full payment of the [f]iling [f]ee from [SmartPay], which is required to commence the proceedings.  As of today it remains unpaid and as such the arbitration file will be closed effective October 19, 2017."

**D.    Motion to Vacate Order Referring Case to Arbitration and to Lift Stay**

In November 2017, Freeman filed a motion in the district court, arguing that SmartPay had refused to pay JAMS's initial arbitration fees and, therefore, the district court should lift the stay and allow the federal litigation to resume. Freeman contended that SmartPay's refusal to pay JAMS constituted either a waiver of arbitration, a breach of the arbitration agreement, or both.  SmartPay argued that the district court should not lift the stay because it had not refused to arbitrate.

**E.    District Court's Order Lifting Stay**

In January 2018, the district court granted Freeman's motion to vacate the order referring the case to arbitration, lifted the stay, and directed the clerk to

9

reopen the case. The district court stated that SmartPay was obligated to comply with JAMS's procedures and to pay the initial filing fee because it drafted an agreement requiring arbitration and designating JAMS as an acceptable forum. The district court determined that SmartPay breached the arbitration agreement and waived its right to compel arbitration by refusing to pay the initial filing fee.

The district court cited Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, and stated that SmartPay's refusal to pay caused JAMS to refuse to administer the arbitration. Therefore, the district court concluded that the stay was due to be lifted, because the arbitration underlying the stay had proceeded in accordance with the terms of the agreement and because SmartPay was in default in proceeding with the arbitration.

SmartPay filed an interlocutory appeal of the district court's order, pursuant to Federal Rule of Appellate Procedure 3 and Section 16(a)(1)(A)–(B) of the FAA, 9 U.S.C. § 16(a)(1)(A).

## II. JURISDICTION

We begin, as we must, by deciding whether we have jurisdiction over an appeal from an order vacating a prior order that had stayed a civil action pending arbitration and lifting that stay. The FAA embodies a liberal federal policy favoring arbitration agreements. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983). In a proceeding involving an

issue that is referable to arbitration under a written agreement, a district court, being satisfied that the issue is in fact referable to arbitration, and upon application of a party, shall stay the trial "until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

Section 16 of the FAA governs appeals as of right from the district court's arbitration decisions. Section 16(a)(1)(A) permits immediate appeal from an order "refusing a stay" under § 3. 9 U.S.C. § 16(a)(1)(A).

Here, the district court's July 12, 2017, order stayed the civil action and referred the case to arbitration. The district court's subsequent January 18, 2018, order entered pursuant to § 3 and vacating the prior order, lifting the stay, and reopening the civil case was effectively an order refusing a stay of the civil action under § 3. Therefore, the district court's order was immediately appealable under § 16(a)(1)(A), and we have jurisdiction to review the instant appeal.[2]

---

[2]Several other circuits have considered this issue and have similarly concluded that an order lifting a stay of a civil action is functionally equivalent to an order refusing a stay and is, therefore, immediately appealable. See Moss v. First Premier Bank, 835 F.3d 260, 264 (2d Cir. 2016) ("Because the order appealed from was effectively one 'refusing a stay,' we have jurisdiction to review it." (quotation marks omitted)); Pre-Paid Legal Servs., Inc. v. Cahill, 786 F.3d 1287, 1290 (10th Cir. 2015) ("The order lifting the stay here was effectively one 'refusing a stay.'"); Dobbins v. Hawk's Enters., 198 F.3d 715, 716 (8th Cir. 1999); Corpman v. Prudential-Bache Sec., Inc., 907 F.2d 29, 30 (3d Cir. 1990) ("[T]he district court's order is in essence an order refusing to stay an action.").

### III.  MERITS

On appeal, SmartPay argues that the district court erred in determining that it breached the arbitration agreement and waived its right to insist on arbitration by demanding compliance with the cost-sharing provision in the parties' arbitration agreement.

We review an order denying a motion to stay proceedings and compel arbitration de novo.  Paladino v. Avnet Computer Tech., Inc., 134 F.3d 1054, 1056-57 (11th Cir. 1998).  We review the district court's factual findings for clear error.  White Springs Agric. Chems., Inc. v. Glawson Inv. Corp., 660 F.3d 1277, 1280 (11th Cir. 2011).  "Clear error is a highly deferential standard of review," and "[a] factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Morrissette-Brown v. Mobile Infirmary Med. Ctr., 506 F.3d 1317, 1319 (11th Cir. 2007) (quotation marks omitted).

### A.    Waiver of Arbitration for Failure to Pay Initial Filing Fee

The FAA provides that—if a valid arbitration clause exists and governs a dispute—then a district court should stay the litigation "until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. § 3.  So

12

a district court may lift a stay if the applicant for the stay has defaulted in the arbitration. One way that an applicant can "default in proceeding with such arbitration" is by waiving the right to arbitrate. Id.; see also Pre-Paid Legal Servs., Inc. v. Cahill, 786 F.3d 1287, 1296 (10th Cir. 2015) (explaining that "'default' in § 3 includes 'waiver'"). A district court therefore may lift a stay if the party who seeks to arbitrate has waived its right to do so. Krinsk v. SunTrust Banks, Inc., 654 F.3d 1194, 1200 (11th Cir. 2011). We review de novo whether a party waived its right to arbitration. Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1316 (11th Cir. 2002). To determine whether a party has waived its contractual right to arbitrate, courts apply a two-part test: "First, [they] decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right, and, second, [they] look to see whether, by doing so, that party has in some way prejudiced the other party." Id. at 1315-16 (quotation marks omitted).

"There is no settled rule, however, as to what constitutes a waiver or abandonment of the arbitration agreement." Howard Hill, Inc. v. George A. Fuller Co., 473 F.2d 217, 218 (5th Cir. 1973) (quotation marks omitted). Rather, whether waiver has occurred "depends upon the facts of each case." Burton-Dixie Corp. v. Timothy McCarthy Constr. Co., 436 F.2d 405, 408 (5th Cir. 1971). However, "because federal law favors arbitration, any party arguing waiver of arbitration bears a heavy burden of proof." Stone v. E.F. Hutton & Co., 898 F.2d 1542, 1543

13

(11th Cir. 1990) (quotation marks and alteration omitted). "But the doctrine of waiver is not an empty shell." In re Checking Account Overdraft Litig., 754 F.3d 1290, 1294 (11th Cir. 2014) (quotation marks omitted).

Under the particular factual circumstances here, the district court did not clearly err in finding that JAMS declined to administer the claim due to SmartPay's refusal to pay the initial filing fee. The district court properly relied on JAMS's letter dated October 19, 2017, in which JAMS stated that "[w]e have made multiple requests for full payment of the [f]iling [f]ee from [SmartPay], which is required to commence the proceedings. As of today it remains unpaid and as such the arbitration file will be closed effective October 19, 2017." Indeed, JAMS required that "[t]he entire filing fee must be paid in full to expedite the commencement of the [arbitration] proceedings."

Moreover, the parties' arbitration agreement states that the parties "agree to use one of the two national arbitration organizations and their rules for conducting arbitrations," specifying JAMS and AAA. Although the arbitration agreement arguably may have a different cost-sharing arrangement than JAMS's standards, it is clear that SmartPay drafted a lease-purchase agreement that (1) required arbitration, (2) designated JAMS as an acceptable forum, and (3) obligated SmartPay to pay the initial filing fee. Indeed, in the parties' arbitration agreement,

14

SmartPay expressly agreed to pay the filing fee, stating that "[i]f you file a claim against us, we will pay the initial filing fee."

In sum, SmartPay acted inconsistently with its contractual right to arbitrate when it refused to pay the initial filing fee, as expressly required by the arbitration agreement. See Ivax Corp., 286 F.3d at 1315-16. SmartPay therefore waived its right to arbitration by failing to pay arbitration fees.

As to whether SmartPay prejudiced Freeman by refusing to pay the filing fee, SmartPay's refusal to pay the initial filing fee prematurely terminated the arbitration and effectively precluded Freeman from seeking relief through the arbitration proceeding. Freeman had a contractual right to choose between JAMS and AAA in the parties' arbitration agreement, but her choice of JAMS was thwarted due to SmartPay's refusal to pay. She was delayed and forced to proceed with litigation in the district court.[3] As a result, SmartPay's refusal to pay JAMS's filing fee prejudiced Freeman. Therefore, the district court did not err in

---

[3]Although SmartPay contends that Freeman was required to file a claim with AAA when JAMS refused to administer the claim, the district court did not err in not requiring Freeman to arbitrate in front of AAA. Freeman had a contractual right to choose to arbitrate with JAMS or AAA. The parties' arbitration agreement did not require that she choose AAA when SmartPay failed to pay the initial filing fee to JAMS. Also, in any event, AAA and JAMS have similar cost-sharing procedures for consumer arbitrations, with AAA's consumer expenses capped at $200 and JAMS's consumer expenses capped at $250.

15

concluding that SmartPay waived its right to compel arbitration by refusing to pay the initial filing fee.[4]

## B.    Waiver of Arbitration for Noncompliance with JAMS's Standards

On appeal, SmartPay argues that JAMS did not decline to administer the claim due to SmartPay's refusal to pay the initial filing fee.  Rather, SmartPay insists that JAMS declined to administer the claim because the arbitration agreement had provisions that were inconsistent with JAMS's Consumer Minimum Standards, and SmartPay refused to waive such provisions inconsistent with JAMS's standards.  We are not persuaded by this argument because the provisions of the parties' arbitration agreement can be reconciled with JAMS's standards.

Specifically, the parties' arbitration agreement states that the parties "agree to use one of the two national arbitration organizations [JAMS or AAA] and their rules for conducting arbitrations."  (emphasis added).  As for costs, the arbitration

---

[4]For the same reasons that the district court did not err in concluding that SmartPay waived its right to compel arbitration, the district court did not err in concluding that SmartPay breached the arbitration agreement when it refused to pay JAMS's initial filing fee.  As explained above, SmartPay drafted a lease-purchase agreement requiring arbitration and designating JAMS as an acceptable forum and, therefore, SmartPay was obligated to pay the initial filing fee.  Indeed, in the parties' arbitration agreement, SmartPay expressly agreed to pay the initial filing fee, which it failed to do.  See Pre-Paid Legal Servs., 786 F.3d at 1294 (holding that "a party's failure to pay its share of arbitration fees breaches the arbitration agreement and precludes any subsequent attempt by that party to enforce that agreement"); Brown v. Dillard's, Inc., 430 F.3d 1004, 1008-09, 1011 (9th Cir. 2005) (explaining the defendant "breached the arbitration agreement by refusing to participate in properly initiated arbitration proceedings" by paying its share of arbitration fees and that the "breach was tantamount to a repudiation of the arbitration agreement"); Sink v. Aden Enters., 352 F.3d 1197, 1201 (9th Cir. 2003) ("[F]ailure to pay required costs of arbitration was a material breach of its obligations in connection with the arbitration.").

agreement provides that "[i]f [Freeman] files a claim against us, [SmartPay] will pay the initial filing fee," but other than that "[e]ach party must pay its own attorneys' fees and other costs of the arbitration."

The parties' arbitration agreement does <u>not</u> provide an express breakdown of costs.  Rather, each party must pay "its own" costs, which, in connection with the provision stating that the parties would follow the rules of the chosen arbitration provider, suggests that the parties must pay their own costs as determined by that organization without any further cost-sharing.  If the two provisions are read together, JAMS's Consumer Minimum Standards provide content to the cost-sharing provision in the parties' arbitration agreement by specifying what each party's "own" costs are: Freeman's costs were capped at $250, and the remaining amount constituted SmartPay's own "costs of the arbitration."  Rather than SmartPay paying the full $1,200, SmartPay could have paid the $950, given that the consumer Freeman had quickly paid the $250 JAMS requested.  To the extent that SmartPay wanted to pay the full $1,200, SmartPay could have readily paid the $950 and taken that $250 up with the selected arbitrator.

Indeed, any dispute that SmartPay had with the fee-sharing arrangement could and should have been submitted to the arbitrator.  JAMS stated in a letter that "[t]he Parties are also free to raise any additional questions regarding the application of the [Consumer] Minimum Standards with the Arbitrator, once

17

appointed, and may participate in any strike and rank process without waiving any objections." SmartPay could have paid the filing fee, as it expressly agreed to do in the arbitration agreement, and then, once an arbitrator was appointed, SmartPay could have disputed whether there was a conflict between the arbitration clause in the lease-purchase agreement and JAMS's standards or whether they could be reconciled.

In short, any alleged conflict between the arbitration agreement's cost-sharing provision, the provision requiring the parties to follow the chosen arbitration organization's rules, and JAMS's Consumer Minimum Standards is reconcilable. See Inter-Active Servs., Inc. v. Heathrow Master Ass'n, 721 So. 2d 433, 435 (Fla. Dist. Ct. App. 1998) ("Where the contract is susceptible to an interpretation that gives effect to all of its provisions, the court should select that interpretation over an alternative interpretation that relies on negation of some of the contractual provisions."). When SmartPay refused to comply with JAMS's Consumer Minimum Standards, SmartPay acted inconsistently with and, therefore, waived its contractual right to arbitration.

And SmartPay's refusal to comply with JAMS's Consumer Minimum Standards prejudiced Freeman in the same way its failure to pay JAMS's initial filing fee prejudiced her. SmartPay prematurely terminated the arbitration and

effectively precluded Freeman from seeking relief through arbitration rather than in the district court.

## C.    Lifting the Order Staying the Civil Action

As stated above, in a proceeding involving an issue that is referable to arbitration under a written agreement, the court, being satisfied that the issue is in fact referable to arbitration, and upon application of a party, shall stay the trial "until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. § 3.

Despite SmartPay's argument that the arbitration had not proceeded in accordance with the terms of the agreement because no arbitration occurred, no arbitrator was appointed, and no arbitration award was awarded, Freeman initiated an arbitration that was terminated by JAMS after SmartPay failed to pay the filing fee.  The district court did not err in concluding that the "stay [was] due to be lifted, because the arbitration underlying the stay 'ha[d] been had in accordance with the terms of the agreement'" and because SmartPay was "in default in proceeding with the arbitration" by failing to pay the filing fee.  See Hernandez v. Acosta Tractors Inc., 898 F.3d 1301, 1303, 1305 (11th Cir. 2018) ("Once [the employer] defaulted in the arbitration [by failing to pay the required arbitration fees], the [d]istrict [c]ourt would have been within its power to find that [the

19

employer] could no longer require [the employee] to proceed in arbitration.");

Pre-Paid Legal Servs., 786 F.3d at 1294 ("Under the AAA rules, the panel

terminated the proceedings.  As such, the arbitration 'ha[d] been had in accordance

with the terms of the agreement' . . . . Failure to pay arbitration fees constitutes a

'default' under § 3.").

## IV.  CONCLUSION

For the foregoing reasons, the district court's January 18, 2018, order

granting Plaintiff Freeman's motion to vacate the order referring the case to

arbitration, lifting the stay of litigation, and directing the clerk to reopen the case is

affirmed.

**AFFIRMED.**