

# NUMBER 13-21-00057-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

VETS SECURING AMERICA, INC.,                                    Appellant,

v.

EDWARD SMITH,                                                      Appellee.

## On appeal from the County Court at Law No. 2
## of Nueces County, Texas.

# OPINION

## Before Chief Justice Contreras and Justices Benavides and Silva
## Opinion by Chief Justice Contreras

In this accelerated interlocutory appeal, appellant Vets Securing America, Inc. (VSA) contends that the trial court erred by granting appellee Edward Smith's motion to lift a stay which was previously imposed to allow the parties to arbitrate an employment dispute. We affirm.

## I.  BACKGROUND

Smith was employed by VSA as a part-time security guard. As part of his employment, he was required to agree to an arbitration policy covering "any dispute between an employee and the Company."[1] In 2020, Smith sued VSA for disability discrimination and retaliation. He alleged that he is a disabled military veteran and that, in June 2019, "[his] part-time schedule was taken from [him] by [VSA] and given to two non-disabled employees." He asserted that this amounted to a "requirement" that he work full-time, which he claimed he could not do because of his disability.

After Smith acknowledged that these claims are covered by the arbitration policy, the parties filed a "Joint Motion to Abate" the trial court proceedings "pending the outcome of arbitration." On September 9, 2020, the trial court granted the "Joint Motion to Abate" and signed an order stating that "all proceedings in this matter shall be abated until the parties complete arbitration in accordance with the terms of the parties' aarbitration

---

[1] The policy stated in part:

[T]he Company [VSA] has adopted this Employment Arbitration Policy ("Policy"), consistent with and pursuant to the Federal Arbitration Act.

This Policy is a binding contract between the Company and its employees. Acceptance of employment or continuation of employment with the Company is deemed to be acceptance of this Policy. . . .

**1. Scope of Policy.** The agreement between each individual employee and the Company to be bound by the Policy creates a contract requiring both parties to resolve most employment-related disputes . . . that are based on a legal claim through final and binding arbitration. Arbitration is the exclusive forum for the resolution of such disputes, and the parties mutually waive their right to a trial before a judge or jury in federal or state court in favor of arbitration under the Policy. . . .

**2. Covered Disputes.** The disputes covered under this Policy include any dispute between an employee and the Company . . . . A dispute is based on a legal claim and is subject to this Policy if it is not specifically excluded from the Policy and if it arises from or involves a claim under any federal, state or local statute, ordinance, regulation or common law doctrine regarding or relating to employment discrimination . . . .

**4. Arbitration Rules and Procedures.** Arbitration shall be held pursuant to the Employment Arbitration Rules of the AAA then in effect and available at: http://www.adr.org. . . .

aagreement [sic]."

Smith then initiated arbitration with the American Arbitration Association (AAA) and timely paid his required filing fee of $300. On November 3, 2020, AAA sent a letter to the parties stating in part:

> In cases before a single arbitrator, a non-refundable filing fee of $300.00, is due from the employee when a claim is filed, unless the arbitration agreement provides that the employee pay less. A non-refundable fee of $1,900.00 is due from the employer, unless the arbitration agreement provides that the employer pay more.
>
> We have received the employee's portion of the filing fee in the amount of $300.00. Accordingly, we request that the employer pay its share of the filing fee in the amount of $1,900.00 on or before November 13, 2020. Upon receipt of the balance of the filing fee, the AAA will proceed with administration.
>
> . . . .
>
> We would like to remind the employer that [u]nder the Costs of Arbitration Section of the Employment/Workplace Arbitration Rules, the employer's full share is due as soon as the employee meets his or her filing requirements, even if the matter settles. This notice confirms that employee's filing requirements have been met.

On November 18, 2020, AAA sent a letter to the parties stating in part:

> We have not yet received payment from the employer to cover their portion of the filing fee, as described in our letter dated November 3, 2020. **The employer is requested to pay $1,900.00 to the AAA by December 2, 2020.** The employer's share of the fee is due regardless of whether the case settles.
>
> If payment was already sent, please accept our apologies and disregard this letter. If this non-payment is simply an oversight on the employer's behalf, we trust payment will be made promptly.
>
> We hope that this situation does not escalate to this level, but we want you to be aware that it is the policy of the AAA that if an employer does not comply with our request to pay the administrative fees stated in the Employment/Workplace Fee Schedule, the AAA may decline to administer future cases involving that employer. In addition, the employer may be requested to remove the AAA as the provider organization from their employment arbitration clauses.

(Emphasis in original.)

On December 8, 2020, AAA sent an email to the parties stating: "We still have not received the respondent's share of the filing fee in the amount of $1,900.00. We kindly ask that payment be made on or before December 15, 2020 in order to avoid having this matter administratively closed." Attached to the email was a copy of an invoice addressed to VSA for $1,900.

Finally, on December 22, 2020, AAA sent a letter to the parties stating in part:

The employer has failed to submit the previously requested filing fee; accordingly, we have administratively closed our file in this matter. Any filing fees received from the employee will be refunded under separate cover.

Because the employer has failed to comply with the Employment Arbitration Rules and the Employment Due Process Protocol, we will decline to administer any future employment matter involving Respondent. We ask that Respondent remove our name from its arbitration agreements so there is no confusion to the public.

After receiving this notice, VSA's counsel paid VSA's share of the filing fee via his personal credit card. The following day, AAA sent an email to the parties stating:

We have received payment from the respondent in the above referenced matter. In order to assign this case to a case manager, we need confirmation from the claimant in order to re-open this case. Please provide confirmation to the attention of this address.

But Smith refused to "confirm" his willingness to proceed. Instead, he filed an "Opposed Motion to Lift Stay" on January 22, 2021, arguing that VSA had waived arbitration by failing to timely pay the AAA filing fee, and citing *Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005), as an analogous case. VSA filed a response, which included an affidavit by Felix Digilov, an attorney with the law firm representing VSA. The affidavit stated in part:

3.      On October 30, 2020, upon notice from the AAA, I directed my staff to coordinate with our accounting department, in Los Angeles, California to

4

pay the $1,900.00 AAA filing fee. On December 8, 2020, after I received an email inquiry from my assistant, I once again directed my staff to remit payment of the AAA filing fee. I was assured by my staff that the firm would make the payment.

4. Due to a clerical error within my firm's accounting department, the accounting clerk did not notify either [lead counsel] William S. Helfand or myself that our directions to remit the AAA filing fee payment were not carried out. Thus, the AAA filing fee remained unpaid until we received notice from the AAA on December 22, 2020. Upon notice from AAA on December 22, 2020, Mr. Helfand paid the AAA filing fee immediately with his personal credit card. On December 23, 2020, the AAA notified Defendant that it accepted the Defendant/Respondent's initial $1,900.00 filing fee and they invited Plaintiff's counsel to reconfirm his intent to move forward with the arbitration.

5. At that point, nothing had occurred in the arbitration other than the billing. The parties had not yet been provided a list of potential arbitrators and no schedule for the arbitration proceedings had even been discussed. The AAA offered to move forward on the same schedule as if we had paid the fee two days earlier, but again Plaintiff's counsel refused.

6. The AAA has an internal appeal process. When it was clear that the Plaintiff was relying on his own refusal to move forward with the arbitration as a means of trying to avoid his obligation to arbitrate his claims, I initiated an appeal within the AAA to request that, in light of the parties' Rule 11 agreement and the Court's Order requiring arbitration that the AAA reinstate this arbitration regardless of Plaintiff's efforts to use the payment of the fee one day late as a means of avoiding arbitration. That appeal remains pending.

7. The payment of the AAA's fee one day late was due to a clerical mistake by counsel, and was not at all intentional. It was certainly not based on anyone's conscious decision and, rather, was directly the opposite of what I attempted to arrange internally. This mistake was not one caused by our client, [VSA]. In fact, like me and Mr. Helfand, the client did not even know of our mistake until after it occurred. [VSA] has always insisted on its contractual right to arbitrate and [VSA] has not done anything inconsistent with that right.

At a hearing on Smith's motion to lift stay on February 1, 2021, the trial court heard arguments from counsel and then concluded as follows:

THE COURT: Okay. I don't know if this is going to—the motion before me is basically just a motion to lift the stay and abatement. And although [Smith's counsel] talks about waiver in that

5

Dillard's case, I'm not going to make a ruling on the waiver issue. But I am going to grant his order to lift the stay and abatement. I'm going to give y'all a trial date and we'll just play it by ear. I will reconsider, when those are brought before me, on the waiver issue or a breach of contract case or maybe the arbitration since y'all are appealing that whole issue with the arbitration ward [sic]. Maybe they will take it up before. So let me—okay, so it's just a plain order that he submitted. So I'm going to sign off on that. There's no findings on this. So it looks like it's a plain order. Do you have any objection, [VSA's counsel], to the form of the order?

[VSA's counsel]: Yes, Judge. I think if the Court is going to withdraw—if the Court is going to unabate the case, then the Court has to set aside its order compelling arbitration because—

THE COURT: Okay. That's your objection? That's your objection to the form, sir?

[VSA's counsel]: Yes, Judge. I'd ask that the Court specifically withdraw its order referring the case to arbitration.

THE COURT: Okay. Your objection is overruled and I'm going to sign the order that was submitted. And then I guess I'll be visiting with y'all again at some point when those other issues are brought before me if they're not resolved in the arbitration.

. . . .

[VSA's counsel]: Okay. Judge, again, regardless of the Court's overruling my objection to the form, the effect of the Court's order is to reinstate this case on the Court's docket instead of arbitration, am I correct?

THE COURT: Well, unless there's other things that are brought to my attention. The only—what I'm reading, [plaintiff's counsel] is basically to take y'all out. I'm not ruling on whether y'all had waived it. I was looking at the arbitration agreement to see if there was anything that the Court could order her [sic] to consent. Because it seems to me, you know, she [sic] agreed to the arbitration. I mean, it's unusual that I have a plaintiff agree to arbitrate yet they agree to arbitrate and then for whatever reason y'all drop the ball. And so . . .

[VSA's counsel]: It sounds like I need to file now an opposed motion to

6

compel arbitration, Judge, and I'll just do that.[2]

THE COURT: Okay. Then—okay, then I think that's it. We're adjourned. Thank you, everyone.

The trial court signed an order granting Smith's motion to lift stay. The order states, in its entirety:

On this 1st day of February, 2021, the court considered the plaintiff's motion to lift the stay/abatement in this matter in the above-styled and numbered matter [sic]. After considering the motion, the response, if any, and the record, the Court GRANTS the motion.

It is therefore ORDERED, ADJUDGED, and DECREED, that the plaintiff's motion to list [sic] stay/abatement is GRANTED. This matter will be set for a jury trial upon entry of a docket control order.[3]

Signed and entered on this 2nd day of February, 2021.

VSA then filed a motion to reconsider, which was denied. This interlocutory appeal followed.

## II.    DISCUSSION

### A.    Appellate Jurisdiction

We first address whether we have jurisdiction over the appeal. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) ("[W]e are obligated to review *sua sponte* issues affecting jurisdiction.").[4] Generally, an appeal may only be taken from a final judgment, unless an interlocutory appeal is authorized by statute. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001).

The parties do not dispute that the Federal Arbitration Act (FAA) applies to this

---

[2] No motion to compel arbitration appears in the record.

[3] No order setting a trial date appears in the record.

[4] In its brief, VSA asks us to issue a writ of mandamus in the event we conclude we lack appellate jurisdiction. *In re Merrill Lynch & Co.*, 315 S.W.3d 888, 891 (Tex. 2010) (orig. proceeding) ("Under the FAA, mandamus relief is appropriate if the trial court abuses its discretion by failing to stay the litigation or compel arbitration."). In light of our conclusion that we have appellate jurisdiction, we deny this request as moot.

7

case. *See In re Brock Specialty Servs.*, 286 S.W.3d 649, 653 (Tex. App.—Corpus Christi–Edinburg 2009, orig. proceeding) ("The FAA may govern a written arbitration clause enforced in Texas state court if the parties have expressly contracted for the FAA's application. . . . When parties have designated the FAA to govern their arbitration agreement, their designation should be upheld."); *see* 9 U.S.C. § 2 (stating that the FAA applies to a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . ."); *id.* § 1 (defining "commerce" as interstate commerce).

The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action *until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration*.

9 U.S.C. § 3 (emphasis added). An appeal may be taken from an interlocutory order "refusing a stay of any action under [§] 3" of the FAA. *Id.* § 16(a)(1)(A); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 ("In a matter subject to the [FAA], a person may take an appeal . . . from the judgment or interlocutory order of a district court, county court at law, or county court under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. [§] 16."). An order lifting a previously-imposed stay is considered an order "refusing a stay" for purposes of the FAA. *Pre-Paid Legal Servs. v. Cahill*, 786 F.3d 1287, 1291 (10th Cir. 2015); *GEA Grp. AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 414 (7th Cir. 2014); *Dobbins v. Hawk's Enters.*, 198 F.3d 715, 716 (8th Cir. 1999); *Corpman v. Prudential-Bache Secs.*, 907 F.2d 29, 30 (3d

8

Cir. 1990). Accordingly, we have jurisdiction over the appeal. *See* 9 U.S.C. § 16(a)(1)(A); TEX. CIV. PRAC. & REM. CODE ANN. § 51.016.

## B.     Motion to Lift Stay

The only question presented in this appeal is whether the trial court erred by granting Smith's motion to lift the "stay/abatement" that was previously ordered on September 9, 2020. As is apparent from the "Joint Motion to Abate," there is no dispute that the arbitration agreement is valid and enforceable or that Smith's claims fall within its scope. In this situation, the FAA states that a trial court, upon a party's motion, must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. We review a trial court's decision on whether to grant a stay under FAA § 3 for abuse of discretion. *Big Bass Towing Co. v. Akin*, 409 S.W.3d 835, 838 (Tex. App.—Dallas 2013, no pet.).

In his motion to lift stay, Smith argued that VSA waived arbitration and breached the agreement to arbitrate by failing to timely pay its share of the AAA filing fee. He asked the trial court to "lift the stay/abatement" and to set the cause for a jury trial. In its response to Smith's motion, VSA conceded that it paid its AAA filing fee "24 hours late due to an administrative error," but it claimed that it did not waive its right to arbitration because (1) it did not substantially invoke the judicial process, and (2) the late payment did not cause "any discernible prejudice" to Smith. VSA further argued that the "Joint Motion to Abate" constituted a Rule 11 agreement binding Smith to consent to proceeding with arbitration despite the late payment. *See* TEX. R. CIV. P. 11.

"Although waiver of arbitration is a disfavored finding, the right to arbitrate—like all

9

contract rights—is subject to waiver." *Forby v. One Techs., L.P.*, 909 F.3d 780, 783 (5th Cir. 2018) (internal quotations omitted); *see Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008) (noting that federal and Texas law "strongly favor arbitration"). Generally, a party seeking to prove waiver of a right to arbitrate must demonstrate: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990). A party may waive enforcement of an arbitration clause by "substantially invoking the judicial process to the other party's detriment or prejudice." *Forby*, 909 F.3d at 783; *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986); *Perry Homes v. Cull*, 258 S.W.3d 589, 590 (Tex. 2008); *In re Fleetwood Homes of Tex.*, 257 S.W.3d 692, 694–95 (Tex. 2008) (orig. proceeding) (per curiam).

In arguing that VSA waived its right to arbitrate, Smith principally relied on *Brown v. Dillard's*, 430 F.3d 1004 (9th Cir. 2005). In that case, the plaintiff Brown filed a notice of intent to arbitrate her wrongful termination claim, but a representative of her former employer, Dillard's, "told Brown that her complaint had no merit and that Dillard's refused to arbitrate." *Id.* at 1009. Brown then filed suit in California district court. *Id.* After removing the case to federal court, Dillard's moved to compel arbitration. *Id.* The federal district court held that the arbitration agreement was unconscionable, and therefore unenforceable, because "it is not clear that the agreement binds Dillard's to arbitrate its own employment-related claims in any meaningful sense." *Id.* Without ruling on the unconscionability issue, the Ninth Circuit Court of Appeals affirmed on different grounds, holding that Dillard's breached the agreement by refusing to participate in the arbitration

10

proceedings. *Id.* at 1010. The court explained that, under California law, "[h]e who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed." *Id.* (citing *Pry Corp. of Am. v. Leach*, 2 Cal. Rptr. 425 (Cal. Dist. Ct. App. 1960)). By initially refusing to arbitrate Brown's claim, Dillard's "clearly breached" the arbitration agreement; consequently, it lost its right to enforce that agreement. *Id.* The *Brown* court distinguished the case from another in which a party retained its right to arbitrate under an agreement even though it breached another part of the agreement which was unrelated to the arbitration clause. *Id.* at 1011 (citing *Local Union No. 721 v. Needham Packing Co.*, 376 U.S. 247 (1964) and noting that, unlike the defendant in that case, "Dillard's['] breach was tantamount to a repudiation of the arbitration agreement").

In addition to *Brown*, Smith cites several other cases in which a party was found to have waived arbitration by failing to timely pay arbitration filing fees. *See Freeman v. SmartPay Leasing*, 771 Fed. App'x 926, 933 (11th Cir. 2019) ("In sum, SmartPay acted inconsistently with its contractual right to arbitrate when it refused to pay the initial filing fee, as expressly required by the arbitration agreement. SmartPay therefore waived its right to arbitration by failing to pay arbitration fees."); *Pre-Paid Legal Servs.*, 786 F.3d at 1294 ("[A] party's failure to pay its share of arbitration fees breaches the arbitration agreement and precludes any subsequent attempt by that party to enforce that agreement."); *Sink v. Aden Enters.*, 352 F.3d 1197, 1201 (9th Cir. 2003) ("Aden's failure to pay required costs of arbitration was a material breach of its obligations in connection with the arbitration. Aden had a fair chance to proceed with arbitration, but Aden scuttled that prospect by its non-payment of costs, impeding the arbitration to the point where the

11

arbitrator cancelled the arbitration and declared Aden in default. In these circumstances, we hold that § 4 of the FAA does not compel a district court to return the parties once more to arbitration."); *see also Garcia v. Mason Contract Prods.*, No. 08-23103-CIV, 2010 WL 3259922, at *5 (S.D. Fla. Aug. 18, 2010) (unpublished) ("Defendant's failure to comply with the contractual rules agreed to by the parties clearly constitutes a 'default' as that term is used in § 3 of the FAA. . . . Having defaulted on the parties' contractual rules, Defendant can no longer claim entitlement to a stay or dismissal as per § 3 of the FAA.").

For purposes of the prejudice analysis, *Brown* is distinguishable from the instant case. There, the plaintiff "did not choose to litigate. She chose to arbitrate, and when she was rebuffed by Dillard's, she sued as a last resort." *Brown*, 430 F.3d at 1012. The court therefore held that, "[i]n this circumstance, we have no trouble concluding that the delay and costs incurred by Brown are prejudicial for the purpose of waiver analysis." *Id.* at 1012–13. On the other hand, in this case, Smith filed his lawsuit before agreeing to arbitration. *See id*. at 1012 ("Unsurprisingly, courts are reluctant to find prejudice to the plaintiff who has chosen to litigate, simply because the defendant litigated briefly (e.g., by filing a motion to dismiss or requesting limited discovery) before moving to compel arbitration."). And the record shows that, if Smith had confirmed to AAA his willingness to arbitrate despite VSA's late fee payment, the arbitration would have proceeded on the same schedule as if VSA had paid the fee one day earlier.[5]

Even though *Brown* is not exactly on point, we find that the trial court did not abuse its discretion in granting Smith's motion to lift stay. We note first that it is unclear whether

---

[5] *Brown* is also factually distinguishable on the basis that Dillard's "refused" to arbitrate, whereas VSA's failure to timely pay the filing fee was unintentional, at least according to Digilov. This is a distinction without a legal difference, however, because subjective intent to waive is not among the elements necessary to establish waiver. *See Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990).

Smith actually needed to show he was prejudiced by VSA's delay in order for his motion to have merit. Several of the cases cited above, including *Brown*, considered whether a party breached the arbitration agreement, and therefore forfeited its right to enforce it under traditional contractual waiver rules, by failing to timely pay the filing fee. *See Brown*, 430 F.3d at 1010; *Sink*, 352 F.3d at 1201; *Freeman*, 771 Fed. App'x at 933. But the question presented here is narrower—it asks only whether the trial court was required to maintain the stay under § 3 of the FAA. To establish that the stay should be lifted, Smith arguably did not need to show the traditional elements of waiver, including prejudice, nor did he necessarily need to show that VSA materially breached the arbitration agreement so as to excuse his performance thereunder. *See Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994) ("[W]hen one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform."). Instead, he had to show only that the arbitration "has been had in accordance with the terms of the agreement" or that VSA is "in default in proceeding with such arbitration." *See* 9 U.S.C. § 3. If he made either showing, then the statute does not require a stay, regardless of whether the late payment was prejudicial. *See id.*; *Pre-Paid Legal Servs.*, 786 F.3d at 1294 ("The AAA determined the arbitration had gone as far as it could due to Mr. Cahill's repeated refusal to pay the fees. Under the AAA rules, the panel terminated the proceedings. As such, the arbitration 'ha[d] been had in accordance with the terms of the agreement,' removing the § 3 requirement for the district court to stay the proceedings."); *see also, e.g.*, *Mead v. Johnson Grp.*, 615 S.W.2d 685, 689 (Tex. 1981) ("Default by one party excuses performance by the other party.").

Courts have repeatedly found default when the arbitrating authority terminates

13

arbitration for non-payment of fees or enters a default due to non-payment. *See Sink*, 352 F.3d at 1199–20 (affirming denial of motion to compel arbitration on default grounds after arbitrator cancelled arbitration due to non-payment of fees and entered default); *Garcia*, 2010 WL 3259922, at *4 (denying motion to compel arbitration after arbitrator entered default upon non-payment of fee and AAA refused to reopen the case after payment); *Stowell v. Toll Bros.*, No. 06-CV-2103, 2007 WL 30316, at *1 (E.D. Pa. Jan. 4, 2007) (mem.) (finding defendant defaulted when AAA "declined to administer the case" due to defendant's non-payment of filing fee). Here, AAA administratively closed the arbitration expressly because of VSA's late payment. Thus, the arbitration "ha[d] been had in accordance with the terms of the agreement," and VSA was "in default in proceeding with [the] arbitration," meaning the FAA did not require a stay. *See* 9 U.S.C. § 3; *Pre-Paid Legal Servs.*, 786 F.3d at 1294; *cf. Conn Appliances, Inc. v. Jones*, No. 05-20-00149-CV, 2020 WL 6304990, at *4 (Tex. App.—Dallas Oct. 28, 2020, no pet.) (mem. op.) (finding trial court should have compelled arbitration where plaintiff "failed to establish that the AAA terminated the arbitration proceedings due to a non-payment of fees and in fact acknowledges that at present the arbitration case is not in danger of being suspended or close[d]").

Even assuming a showing of prejudice was required, we conclude it was sufficiently made in this case. First, VSA's repeated contention that it paid its filing fee only "one day late" is disingenuous. There is no dispute that, after Smith initiated arbitration, VSA received at least three written notices from AAA: the first requesting payment of the filing fee on or before November 13, 2020; the second requesting payment on or before December 2, 2020; and the third requesting payment on or before December

14

15, 2020. Having not received the payment in response to any of the above notices, AAA "administratively closed" the arbitration, as evidenced by its December 22, 2020 letter. VSA's counsel paid the filing fee only after receiving this letter. The payment was made thirty-nine days after November 13, 2020—the date upon which AAA initially informed VSA that payment was due. Though VSA argues that a one-day delay in payment would not have caused any delay in the arbitration schedule if Smith agreed to proceed, the record does not support the same conclusion with respect to a thirty-nine-day delay in payment.

Second, the fact that Smith initially chose to litigate before submitting his claim to arbitration does not mean that he cannot have suffered prejudice from VSA's delay. Though the *Brown* court remarked that "courts are reluctant to find prejudice to the plaintiff who has chosen to litigate," that was in the context of considering whether the defendant waived arbitration by "substantially invoking the judicial process." In such a situation, a plaintiff who initially chose to litigate cannot claim to be prejudiced by the defendant making the same choice. But here, Smith does not argue that VSA waived arbitration by substantially invoking the judicial process; instead, he claims that VSA was in default of its obligations under the arbitration agreement. Accordingly, it is immaterial to the prejudice analysis that Smith filed suit before he agreed to arbitrate.

On appeal, VSA emphasizes that the trial court pointedly refused to rescind or vacate its September 9, 2020 order and made "no findings" at the February 1, 2021 hearing. VSA characterizes the September 9 order as an "order compelling arbitration," and it argues that the trial court's refusal to vacate it means that the parties must proceed with arbitration despite VSA's late payment of the filing fee. But strictly speaking, the

September 9 order did not compel arbitration; instead, it abated the case so that arbitration could be completed. The trial court was never asked to adjudicate the issue of whether Smith's claims were referable to arbitration under the agreement, and it made no such finding at any point. Instead, it abated the case because the parties had already agreed that Smith's claims were arbitrable. Thus, the fact that the trial court expressly refused to vacate the September 9 order does not mean that Smith must agree to confirm his willingness to proceed with arbitration.[6]

VSA also argues that Smith is required to confirm his willingness to proceed with arbitration because the "Joint Motion to Abate" constituted a Rule 11 agreement in which Smith agreed to "complete" arbitration. But to the extent the joint motion constituted a legally-binding agreement, it was an agreement to arbitrate Smith's claims in accordance with the arbitration agreement. By failing to timely pay the AAA filing fee after at least three written notices and thirty-nine days, VSA breached that agreement and thereby surrendered its ability to enforce it. *See Pre-Paid Legal Servs.*, 786 F.3d at 1294; *Sink*, 352 F.3d at 1201.

Finally, we note that due to VSA's late payment, AAA's own rules prevent it from proceeding with arbitration without Smith's "confirmation." However, Smith has refused to provide that confirmation, and AAA—a private entity—is powerless by itself to compel Smith to provide it. Moreover, VSA has never explicitly requested a court order compelling

---

[6] VSA reads too much into the trial court's remarks at the February 1, 2021 hearing. As shown by the hearing transcript, the court declined to vacate its September 9, 2020 order not because it believed the parties were required to return to arbitration, but rather because that relief had not been requested in the parties' pleadings. The court's remark regarding "no findings" referred to the proposed order submitted by Smith's counsel; and the court's statement seemingly anticipating further arbitration proceedings ("I guess I'll be visiting with y'all again at some point when those other issues are brought before me if they're not resolved in the arbitration") referred to Digilov's representation that he "initiated an appeal" with AAA in order to "reinstate this arbitration" despite Smith's refusal to consent. These remarks do not indicate that the trial court intended to order the parties to return to arbitration.

Smith to provide confirmation or compelling AAA to re-open the case without his confirmation. In any event, according to its December 22, 2020 letter to the parties, AAA "will decline to administer any future employment matter involving [VSA]" because of VSA's late payment.[7] If the trial court had denied Smith's motion to lift stay here, it is feasible that the dispute would devolve into a stalemate, with neither forum willing or able to hear Smith's claims. Such an outcome would be odious to the interests of justice and would not advance any public policy favoring arbitration.[8]

By paying its arbitration filing fee late, after multiple notices and extensions, VSA defaulted on its obligations under the arbitration agreement. Therefore, § 3 of the FAA did not require the trial court to preserve the stay. We overrule VSA's issue on appeal.

### III.  CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
1st day of July, 2021.

---

[7] In its email of December 23, 2020, AAA advised the parties that it received payment from VSA but would "need confirmation" from Smith "in order to re-open this case" and to assign it to a case manager. The email did not mention AAA's representation, made in its letter the previous day, that it "will decline to administer any future employment matter involving [VSA]."

[8] VSA states in its brief as follows: "In fact, notwithstanding [Smith's] prior refusal to move forward, the AAA re-initiated arbitration of this matter on February 19, 2021." This is a misrepresentation of the record. According to a document attached to VSA's motion to reconsider, VSA opened a *new* case with AAA on February 1, 2021, immediately after the hearing at which the trial court granted Smith's motion to lift stay. However, the document explicitly states that it was merely an acknowledgement of AAA's receipt of documentation. The document states: "This notice does not constitute the AAA's initiation of the case or satisfaction of all AAA administrative filing requirements."

17